**GILMORE, Irvin W., Appellant,**

v.

**ZIMMERMAN, Leroy, Attorney General for the Commonwealth of Pennsylvania.**

No. 85–1650.

United States Court of Appeals, Third Circuit.

Argued April 28, 1986.

Decided June 27, 1986.

Rehearing and Rehearing En Banc Denied July 29, 1986.

Emmanuel H. Dimitriou (Argued), Reading, Pa., for appellant.

Charles P. Macklin, Jr. (Argued), Sr. Deputy Atty. Gen., Prosecutions Section, Harrisburg, Pa., for appellee.

* Honorable Joseph J. Longobardi, United States District Court for the District of Delaware, sit-

Before SLOVITER and STAPLETON, Circuit Judges, and LONGOBARDI, District Judge *.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

Appellant, Dr. Irwin Gilmore, challenges the propriety of a state trial judge's *sua sponte* decision to vacate appellant's plea of guilty to a charge of involuntary manslaughter and to order him to stand trial for murder. Appellant contends that the Double Jeopardy Clause precludes the court from subjecting him to trial after his guilty plea was accepted.

Appellant commenced the instant action by filing a petition for habeas corpus in the district court, 619 F.Supp. 859. Appellant appeals from the denial of relief. We have jurisdiction pursuant to 28 U.S.C. § 2253, and have previously issued a certificate of probable cause and stayed the pending state proceedings. We now affirm.

### I.

At 8:00 a.m. on November 27, 1980, appellant, a medical doctor, awoke and discovered his wife dead beside him in bed. The previous evening they had attended a Thanksgiving eve party, accompanied by their son and daughter-in-law. Appellant and his son had retired at 12:30 a.m., while appellant's wife and daughter-in-law had retired at approximately 2:00 a.m.

The medical evidence indicated that the decedent had died due to a lethal combination of alcohol and meperidine, a drug. The evidence further indicated that she had suffered several bruises to her head and face, that she had been injected with meperidine four to six times at two separate site areas in her right buttock, and that the location of the injections suggested that it was unlikely that the injections were self-administered.

ting by designation.

After his wife's death, appellant made several self-incriminating statements to law enforcement officials regarding his wife's death. As a result, in June of 1981, appellant was charged with criminal homicide, aggravated assault, and recklessly endangering another person.

Appellant eventually entered a plea of guilty to the lesser included offense of involuntary manslaughter. The trial court conducted a lengthy and detailed plea colloquy, during which the prosecuting attorney outlined the factual basis for the plea:

> [O]n the morning of November 28th, 1980, the decedent wife of the defendant, Patricia Gilmore, was discovered dead in her bed. A later examination at the Reading Hospital ..., together with toxicology examinations ..., revealed that the decedent had received multiple injections of a drug known as meperidine. In addition, the blood alcohol level of ... the decedent was .23 which we recognize as being way above the legal definition of intoxication in Pennsylvania. It was the conclusion of [three experts] that the cause of death was the combination of alcohol and meperidine, exact causes of death being poisoning by alcohol and meperidine.
>
> The level of the meperidine in the blood system of the decedent was 2.9 micrograms per milliliter. It does fall within the range of known fatal dosage, and based on that blood alcohol level and the state of medical knowledge known at the time, it was the conclusion of all of the Commonwealth witnesses and experts who would appear at trial, they would conclude that the cause of death was meperidine poisoning together with the alcohol.
>
> Your Honor, in connecting the defendant with the cause of death, the Commonwealth would produce testimony, which would be statements made by the defendant to Chief Harley Smith, Muhlenberg Township Police, and Trooper Barrie Pease; and those statements would show that the defendant was drinking aloholic beverages a short time prior to the death, that the decedent was drinking alcoholic beverages, and further, that theB defendant made a statement to Trooper Pease that he gave the defendant (sic) injection or injections of a vitamin and meperidine. Further questioning of the defendant by Chief Harley Smith, the defendant denied at all times that he gave the defendant (sic) any injections.
>
> It is the statement made to Trooper Pease that he gave the injection, together with the denial made to Chief Harley Smith and the absence of any other explanation as to the injections being received by the decedent that the Commonwealth brought the charges against the defendant.
>
> If the Court please, based upon the state of the defendant's condition, that of intoxication together with his not denying at this time that he gave the injections, the Commonwealth will accept a plea to the charge of involuntary manslaughter.

Plea of Guilty, January 10, 1983, A–499–501.

The defense attorney then offered his comments on the statement of facts given by the prosecution:

> Your Honor, if it please the Court, I have reviewed this matter with Dr. Gilmore. I understand that he understands that the statements made by [the prosecuting attorney] ... are those which the Commonwealth would tend to prove at and would attempt to prove at the time of trial.
>
> I would like to state for the record that the evidence would show that in fact Dr. Gilmore and his wife were at a party the night before, that he had consumed intoxicating beverages, that he was extremely physically exhausted at the time, that he recognizes the possibility that he may have injected meperidine in accordance with the statement which has been admitted by the Court.
>
> I would further like to state for the record that although Dr. Gilmore is not denying—or let me correct that. The

statement as set forth by [the prosecuting attorney] ... that at this time he is not denying should be elaborated upon in this respect: That he is stating he has no recollection of injecting his wife with meperidine or any of the acts related to this incident as a result of his consumption of alcohol and the physical exhaustation at the time.

He is entering his plea because he has concluded, after advice from counsel, that it would be to his best interests to enter the plea of guilty to involuntary manslaughter.

*Id.* at A–501–02.

In response to the court's questioning, the parties advised that the following plea bargain agreement had been reached:

Your Honor, we have agreed that a pre-sentence report should be obtained and ordered and directed by the Court, that the pre-sentence report should include a full psychiatric and physical examination of the defendant and that based upon that pre-sentence report, the Commonwealth will make a recommendation at the appropriate time.

*Id.* at A–505.

The court then advised the defendant that it was not bound by the plea agreement or any recommendation the prosecutor might make but could enter any sentence within the range for involuntary manslaughter previously set forth. Before concluding, the court explained to appellant each of the rights he was giving up by pleading guilty.

Finally, the court accepted appellant's guilty plea:

THE COURT: Dr. Gilmore, I am satisfied that after the foregoing discussion that you do desire to enter a plea of guilty to the charge of involuntary manslaughter and I am convinced that you are doing this with full understanding of the consequences and that you are doing this freely and voluntarily. I will therefore allow you to enter a plea of guilty to the charge of involuntary manslaughter.

[DEFENSE ATTORNEY]: Your Honor, if I may, so that the record is clear, I would like the record to reflect that I have advised Dr. Gilmore that the state of the law, as the Court knows and as we have reviewed it, is that he can enter a plea of guilty without admitting guilt and it's based on the reasons that I have already spread upon the record, the Court's rulings on our pretrial motions, the fact that he does not have a recollection and that he has concluded, with my advice, that it is to his best interest to waive a jury trial or a trial before a judge and to proceed with the guilty plea of involuntary manslaughter.

THE COURT: Yes. I would re-emphasize that, Dr. Gilmore. We have reviewed the cases with counsel for the Commonwealth and with your counsel and we are satisfied under [*Commonwealth v. Cottrell*, 433 Pa. 177, 249 A.2d 294 (1969)] ... which is still good law, that in a case where there is significant evidence of guilt and where you, after adequate consultation with your lawyer, decide to plead guilty to a charge, that your plea is not rendered invalid merely because you are unable or unwilling to detail the occurrence in court or merely because you are unable to remember or have a recollection of what occurred. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand further that you will not be able to come back later and say, "I don't recall what happened and therefore my guilty plea should not be taken." Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: You will be bound by the entry of this plea notwithstanding the fact that you say you have no recollection of what happened at the time involved. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Very well. I will allow the guilty plea to be entered.

A 513–15.

On February 28, 1983, the parties appeared before the court for sentencing on

the plea. The Commonwealth, indicating that it most likely would not be able to obtain a jury verdict higher than involuntary manslaughter, recommended a fine of $10,000 and a five-year sentence of probation with community service in lieu of imprisonment.

The court rejected the prosecutor's recommendation. It permitted appellant to choose between standing on the plea, in which case the court indicated it would "sentence in accordance with the law" as it deemed proper, or withdrawing the plea and standing trial. A–524. Appellant chose to stand on his plea. The court then stated that there were "some important factors that ... [he] should understand." A–525. This colloquy followed:

> THE COURT: Dr. Gilmore, Trooper Pease has stated in his report that you admitted to him that you gave your wife vitamin B–12 and meperidine. Do you recall making that statement to him, or do you deny making it to him, or do you admit making it to him?
> [DEFENSE ATTORNEY]: Your Honor, if it please the Court, I have advised Dr. Gilmore that in line with the plea as we have entered it, I don't think that those matters are relevant at this time. We have entered a plea on the record. We have stated our position on the record, and I do not believe that it's appropriate to develop into anything else other than what is pertinent at this time, which is the sentence.
> THE COURT: Well, then that makes it very easy.... Then in accordance with Rule 320 of the Rules of Criminal Procedure, the guilty plea is struck off. A not guilty plea is entered for the defendant, and he will stand trial. Trial is fixed for March the 21st, 1983.
> [DEFENSE ATTORNEY]: If it please the Court, before the Court proceeds, I'd like to know why the Court is taking the position that he's taking, and I would like

to confer with Dr. Gilmore. I've merely stated my position. THAT DOESN'T MEAN THAT HE WOULD NOT RESPOND.*

> THE COURT: ... there are too many unanswered questions in this whole matter, and therefore, I think the appropriate procedure is that the matter go to trial, and that's why I struck the guilty plea.
> [DEFENSE ATTORNEY]: Your Honor
> ---
> THE COURT: Court is adjourned.

A–525–26.

In March, 1983, appellant sought and obtained a change of venue. Two months later appellant moved to dismiss the proceedings on double jeopardy grounds. The trial judge denied appellant's motion on June 3, 1983, and in September of that year issued an opinion explaining his decision to vacate the guilty plea.

In that opinion, the court found "an inadequate factual basis to support the defendant's equivocal guilty plea." Revised Opinion at 6. The court found that it should accept an equivocal guilty plea only in the presence of "strong evidence" of guilt, and only after taking "special care" to determine whether there is a factual basis. The court then concluded that the record lacked a sufficient factual basis to support appellant's plea. "On the record of this case," the court observed, "the defendant may well have attempted to plead guilty, not because he believed himself to be guilty or that the Commonwealth could prove him guilty, but because he was fatigued, afraid and depressed, and to avoid the physical and mental rigors of a trial." *Id.* at 7. The court concluded, "there are simply too many unanswered questions. Accordingly, our proceeding under Pa.R.Crim.P. 320 [1] in which we struck off the guilty plea and substituted a not guilty plea in its stead, was not an abuse of our discretion." *Id.* at 8.

---

**1.** Pennsylvania Rule of Criminal Procedure 320 provides:

> Rule 320. Withdrawal of Plea of Guilty

At any time before sentence, the court may, in its discretion, permit or direct a plea of guilty to be withdrawn and a plea of not guilty substituted.

The Superior Court of Pennsylvania affirmed on June 22, 1984, and the Supreme Court of Pennsylvania denied appellant's Petition for Allowance of Appeal on March 25, 1985.

The district court held that jeopardy had not "attached irrevocably" when appellant's guilty plea was accepted, and that the guilty plea could be vacated if there was "manifest necessity for such action." *Gilmore v. Zimmerman,* 619 F.Supp. 859, 864 (E.D.Pa.1985). Because the district court agreed with the trial court that there was an insufficient factual basis to support appellant's plea, it found the trial court's actions justified by manifest necessity.

## II.

In *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), Johnson, indicted for offenses ranging from murder to grand theft, pleaded not guilty to murder and aggravated robbery but offered to plead guilty to the lesser included offenses of involuntary manslaughter and grand theft. The trial court accepted the guilty pleas over the state's objection, and then dismissed the remaining charges on double jeopardy grounds. The Supreme Court held that Johnson could, consistent with the Double Jeopardy Clause, be prosecuted for the more serious offenses.

The Court reiterated the "three basic protections" of the Double Jeopardy Clause:

" 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' "

467 U.S. at 498, 104 S.Ct. at 2540, *quoting Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), *quoting North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

The Court rejected Johnson's argument that the double jeopardy prohibition against multiple prosecutions barred his trial on the greater offenses after he pleaded guilty to the lesser included offenses. The Court stated:

The answer to this contention seems obvious to us. Respondent was indicted on four related charges growing out of a murder and robbery. The grand jury returned a single indictment, and all four charges were embraced within a single prosecution. Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now.

467 U.S. at 500–01, 104 S.Ct. at 2541–42.

The Court distinguished *Brown v. Ohio, supra.* In that case, the State first charged defendant with joyriding and, after defendant pleaded guilty to and was sentenced for that offense, indicted him again for auto theft. Finding that joyriding was a lesser included offense of auto theft and that both charges were "the same offense" for purposes of the Double Jeopardy Clause, the *Brown* Court held the subsequent prosecution barred. The *Johnson* Court stated:

We do not believe, however, that the principles of finality and prevention of prosecutorial overreaching applied in *Brown* reach this case. No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. Here respondent offered only to resolve part of the charges against him, while the State objected to disposing of any of the counts against respondent without a trial. Respondent has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial.

The acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending, moreover, has none of the implications of an "implied acquittal" which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses.... There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws....

*Johnson*, 467 U.S. at 501–02, 104 S.Ct. at 2541–42 (citations omitted).

Faced with circumstances similar to those presented in *Johnson*, we ourselves reached precisely the same result in *United States v. Goldman*, 352 F.2d 263 (3d Cir. 1965). Goldman was tried on two charges contained in a single indictment. Midway through trial, the trial court permitted Goldman, over the prosecution's objection, to plead guilty to the lesser included offense. Goldman then objected on double jeopardy grounds to further trial on the pending claim, of which he was nevertheless convicted.

We affirmed, finding that the case presented "no issue of successive trials ... such as characterizes many controversies over double jeopardy." 352 F.2d at 266. We said:

We are concerned merely with the continuation of a single trial until the completion of litigation on both counts of an indictment. If both counts have gone to the jury simultaneously and guilty verdicts had been returned on both, the one arguable contention would have been that the penalty should not exceed that permissible for the greater offense.... We do not see that the situation differs significantly here merely because a change of plea in mid-trial established guilt on one count at an earlier stage of that trial than did the subsequent jury verdict on the other. The accepted plea

of guilty on one count was not a judgment.... Rather, the disposition of both charges was completed later by a single judgment.... [N]either logic nor fairness requires that consecutive determinations in a single trial on two charges growing out of a single transaction be regarded as within the concept of harassment by repetitious litigation constituting double jeopardy. As concerns the harassment problem, Goldman's trial in its entirety was but a single occasion of jeopardy.

*Id.* at 266 (citations omitted).

Similarly, in *United States v. Combs*, 634 F.2d 1295 (10th Cir.1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1982, 68 L.Ed.2d 304 (1981), the defendant was charged in a two-count indictment with bank robbery and bank larceny. Defendant pleaded guilty to the latter charge, and then moved, unsuccessfully, to dismiss the former charge on double jeopardy grounds.

On appeal, the Tenth Circuit treated the offenses as greater and lesser included offenses. However, the court concluded:

[because] acceptance of the plea and the trial constituted only one criminal prosecution, we find no violation of the guarantee against successive prosecution.

*Id.* at 1298.

Finally, *United States v. Schuster*, 769 F.2d 337 (6th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986), is to the same effect. The defendant in that case was convicted for engaging in a continuing criminal enterprise after he had pleaded guilty to charges of conspiracy to import and distribute marijuana. He challenged the former conviction on double jeopardy grounds. The Sixth Circuit held that the charges of which defendant was convicted were the same for double jeopardy purposes. Nevertheless, citing *Johnson*, *Goldman* and *Combs*, the court found that appellant had not been subject to successive prosecutions.

We believe these precedents control this case. Like *Johnson* and *Goldman*, this case involves a single prosecution, not successive ones. Like the defendants there,

appellant pleaded guilty to a lesser included offense while a more serious charge remained pending. If Johnson and Goldman could be thereafter prosecuted in the same proceeding on the more serious offense, we perceive no reason why appellant cannot be prosecuted for murder in the same proceeding.[2] The fact that his plea was stricken obviously puts him in no better position than that of a defendant whose plea remains intact. These precedents teach that the interests protected by the Double Jeopardy Clause's prohibition against successive prosecutions for the same offense simply are not implicated in the situation currently before us.

As the *Johnson* Court noted, the Double Jeopardy Clause also protects against multiple punishments. This did not help Johnson:

> [B]efore respondent can ever be punished for the offenses of murder and aggravated robbery he will first have to be found guilty of those offenses. The trial court's dismissal of these more serious charges did more than simply prevent the imposition of cumulative punishments; it halted completely the proceedings that ultimately would have led to a verdict of guilt or innocence on these more serious charges. Presumably the trial court, in the event of a guilty verdict on the more serious offenses, will have to confront the question of cumulative punishments as a matter of state law, but because of that court's ruling preventing even the trial of the more serious offenses, that stage of the prosecution was never reached. While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.

467 U.S. at 499–500, 104 S.Ct. at 2541.

Similarly, appellant's right to be free from multiple punishment is not presently

threatened and there is no reason to expect that it will ever be. Unlike Johnson, who wound up with two convictions, appellant's prosecution will at most result in only one.

Appellant's contention that the protections of the Double Jeopardy Clause attached when his guilty plea was accepted rests on *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir.1973) and its progeny. *See United States v. Felton*, 753 F.2d 276, 278 (3d Cir.1985); *United States v. Hecht*, 638 F.2d 651, 657 (3d Cir.1981); *United States v. Young*, 503 F.2d 1072, 1074 n. 5 (3d Cir.1974). *See also United States v. Cambindo Valencia*, 609 F.2d 603, 637 (2nd Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980); *United States v. Sanchez*, 609 F.2d 761, 762 (5th Cir.1980); *United States v. Bullock*, 579 F.2d 1116, 1118 (8th Cir.), *cert. denied*, 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978); *United States v. Vaughan*, 715 F.2d 1373, 1378 n. 2 (9th Cir.1983).

However, *Jerry* and its progeny are either distinguishable from or consistent with our holding. *Jerry* itself held that a defendant who by his own motion causes his guilty plea to be withdrawn has waived any right not to be put in jeopardy a second time. *Hecht* involved reinstatement of a guilty plea that was improperly vacated over defendant's objection. *Sanchez* held that a defendant could be tried for the greater offense after the trial court *conditionally* accepted but then ultimately rejected defendant's guilty plea to the lesser included offense. Similarly, in *Bullock*, the tendered guilty plea was never accepted. Finally, *Felton, Young* and *Cambindo Valencia* support the proposition that a defendant whose first indictment is resolved by his guilty plea may not be tried for the same offense on a later indictment. None of these cases held that double jeopardy bars further prosecution on a single, multiple-count indictment after a guilty

---

**2.** We recognize that in *Johnson* and *Goldman*, unlike this case and *Schuster*, the prosecution urged the court not to accept the tendered pleas. From the standpoint of the defendant and those interests of his protected by the Double Jeopardy Clause, however, this seems to us a factual difference which should have no legal significance.

plea to a lesser included offense is accepted.

Appellant relies most heavily on the following observation of the court in *Jerry:*

> Jerry must be considered to have been convicted by the entry of his plea of guilty just as if a jury had found a verdict of guilty against him, and jeopardy therefore attached with the acceptance of his guilty plea by the district court.

487 F.2d at 606. It is true that this statement, coming as it did in the context of a case involving a single prosecution, is inconsistent with the result we here reach. As we have noted, however, it represents only an assumption made by the court in the course of reaching a holding altogether inapposite here. More importantly, whatever value it may retain in other contexts, in light of *Ohio v. Johnson,* it can no longer be read to suggest that double jeopardy interests are implicated in a case like this. Similar observations can be made concerning the two other cases upon which appellant relies most heavily, *United States ex rel Metz v. Maroney,* 404 F.2d 233 (3d Cir.1968), *cert. denied,* 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969), and *United States v. Cruz,* 709 F.2d 111 (1st Cir.1983). Both of these appeals challenged, on double jeopardy grounds, a trial court's vacation of a defendant's guilty plea over the defendant's protest. Both involved single prosecutions and both, drawing analogies to the caselaw permitting retrial after certain mistrials, held that continued prosecution following vacation of a guilty plea did not violate the Double Jeopardy Clause in the circumstances before them. The holdings of *Metz* and *Cruz* are thus consistent with ours. Both courts assume, however, that double jeopardy protected interests were implicated in a single prosecution situation and rested their holdings on findings that "manifest necessity" justified vacation of the pleas. We believe the assumption of the *Metz* and *Cruz* courts, like that of the *Jerry* court, is inconsistent with *Ohio v. Johnson.*

III.

Appellant is not threatened with successive prosecutions and the Double Jeopardy Clause offers him no relief from the order of the trial court that he stand trial on the most serious charge in the indictment against him. Consequently, the order of the district court denying relief will be affirmed.