# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2021

Lyle W. Cayce
Clerk

No. 19-11360

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

BUCK GENE BRUNE,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
No. 4:19-CR-159-1

Before JONES, SMITH, and ELROD, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

Buck Brune is a methamphetamine ("meth") dealer. In charging him, the government accidentally cited the wrong statutory subparagraph. After Brune had pleaded guilty, the court copied that error into its order accepting his plea but later corrected it. The court applied a sentencing enhancement on the ground that some of Brune's meth was imported. Brune contends that the court's correction of the erroneous citation amounted to double jeopardy and that the enhancement was erroneous. We find no error and affirm.

No. 19-11360

I.

Brune distributed at least 50–75 pounds of meth over nine months. For five months, he sold half a pound of meth to one coconspirator each day. His supplier was "a member of the Michoacán Cartel based in Dallas, Texas."[1]  Brune concedes that that cartel "borrow[s] its name from a state in Mexico."

The government filed a one-count information based on the conspiracy provision of 21 U.S.C. § 846, charging Brune with conspiracy to violate "21 U.S.C[.] §§ 841(a)(l) and (b)(l)(C), namely to possess with intent to distribute a mixture and substance containing more than 50 grams of methamphetamine."  But the information cited the wrong part of § 841(b)(1):  Subparagraph B—not C—criminalizes possession of a substance containing more than 50 grams of meth.  In contrast, subparagraph C provides "the baseline statutory penalty for *any quantity* of methamphetamine."  *United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000) (emphasis added).  Subparagraph B's penalty range is 5 to 40 years, § 841(b)(1)(B); subparagraph C's is 20 years or less, § 841(b)(1)(C).  The parties agree that subparagraph C is a lesser-included offense of subparagraph B.

Despite that initial error and without any plea agreement, Brune pleaded guilty to subparagraph B,[2] referencing it nine times.  For instance, Brune's factual resume cited subparagraph B, twice indicated that Brune was subject to its penalty range, and twice parroted its 50-gram threshold.  Brune's waiver of indictment also cited subparagraph B.  At arraignment,

---

[1] Although that statement makes it unclear whether the cartel or the member is based in Dallas, Brune agrees that "his source was [*sic*] Michoacán cartel member based in Dallas, Texas."

[2] We use "pleaded guilty to subparagraph B" as a shorthand way of denoting his guilty plea of conspiracy to violate that provision.

2

No. 19-11360

Brune admitted he understood its elements and penalty range. His lawyer admitted that "the intention of the parties was for Mr. Brune to enter a guilty plea to that offense, which was in the factual resume, and that would be a five to 40 count"—namely subparagraph B.

In recommending that the district court accept Brune's guilty plea, however, the magistrate judge copied the information's erroneous citation. The district court adopted that recommendation, accepted the plea, and adjudged Brune guilty. Thus, the presentence investigation report came back with subparagraph C's "maximum term of imprisonment," namely "20 years," even though it should have been 40 years under subparagraph B. The government raised two objections.

First, the government noted that Brune pleaded guilty to subparagraph B—not C. Brune countered, contending, *inter alia*, that modification of the court's order accepting his plea would violate the prohibition against double jeopardy. The district court rejected Brune's contentions and amended its order to reflect that it was accepting Brune's guilty plea to subparagraph B.

Second, the government requested a sentencing enhancement for an offense involving "importation of . . . methamphetamine," which would raise Brune's offense level by two.[3] Brune countered that there was insufficient evidence for that enhancement, because Brune's supplier was "based in Dallas." The court found there was sufficient evidence that Brune conspired to possess meth that "originated in . . . Mexico."

---

[3] U.S.S.G. § 2D1.1(b)(5). With that enhancement, the recommended sentence was 360 to 480 months. Without it, the recommended sentence would have been 292 to 365 months.

No. 19-11360

## II.

The government contends that jeopardy never attached.[4] Our review is *de novo*. *United States v. Dugue*, 690 F.3d 636, 637–38 (5th Cir. 2012) (per curiam). We (A) determine that jeopardy does not always attach upon acceptance of a guilty plea, (B) explain the framework for analyzing attachment under *Ohio v. Johnson*, 467 U.S. 493 (1984), and (C) apply that framework. There was no double-jeopardy violation.

## A.

"No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. To violate that clause, the initial prosecution must have "put [the defendant] in jeopardy." *Id.* That inquiry becomes important where the initial prosecution gets derailed.

If a trial gets derailed, it still puts the defendant in jeopardy if jeopardy (1) attached and (2) terminated.[5] *Attachment* refers to the "point in criminal proceedings at which [double-jeopardy] purposes and policies are implicated." *Serfass v. United States*, 420 U.S. 377, 388 (1975). For instance, in a jury trial, attachment occurs "when the jury is empaneled and sworn." *Crist v. Bretz*, 437 U.S. 28, 38 (1978). *Termination* means that double jeopardy does not bar a second prosecution where "criminal proceedings against an accused have not run their full course." *Justs. of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 308 (1984) (quotation marks and citation omitted). For instance, a mistrial for a deadlocked jury does not terminate jeopardy, *see Richardson v. United*

---

[4] At oral argument, the government also said that "[t]his is not a case involving successive prosecutions." We do not decide whether modification of an order accepting a guilty plea, which contains a clerical error, constitutes a successive prosecution, because Brune's double-jeopardy theory fails in any event.

[5] *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003); 6 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 25.1(d)–(e) (4th ed. 2020).

No. 19-11360

*States*, 468 U.S. 317, 323–24 (1984), but an acquittal does, *see Lydon*, 466 U.S. at 308.

Where a guilty plea gets derailed, the Supreme Court has neither identified a precise moment of attachment[6] nor applied the concept of termination.[7] That reticence left lower courts to fill in the gaps. Because acceptance of a guilty plea is arguably analogous to a jury verdict, courts initially intuited that jeopardy attaches upon acceptance of a guilty plea.[8] For instance, in our first foray into the issue, in *United States v. Sanchez*, 609 F.2d 761, 762 (5th Cir. 1980), we agreed that "[j]eopardy attaches with the acceptance of a guilty plea." Relying solely on a now-abrogated, out-of-circuit case,[9] we provided no reasoning for that conclusion.

It is no surprise, then, that four years later, the Supreme Court "effectively reject[ed] the double jeopardy concerns expressed . . . in *Sanchez*."[10] In *Johnson*, 467 U.S. at 494, the government charged the defendant with two sets of greater and lesser-included offenses. Johnson pleaded guilty—over

---

[6] "[J]eopardy attache[s] at least when [a defendant] [is] sentenced." *Ricketts v. Adamson*, 483 U.S. 1, 8 (1987).

[7] We found only one state court that has applied termination to guilty pleas. *See People v. Cabrera*, 932 N.E.2d 528, 538–39 (Ill. App. Ct. 2010). We know of no federal court that expressly applied termination to plea proceedings. And, as noted below, *Johnson*'s test does not resemble the test for termination. *See* Part II.A.2.b, *infra*. Moreover, neither party asks us to apply termination, so we decline to invoke that concept here.

[8] *See, e.g.*, *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir. 1973) ("Jerry must be considered to have been convicted by the entry of his plea of guilty just as if a jury had found a verdict of guilty against him.").

[9] *See Sanchez*, 609 F.2d at 762 (citing *Jerry*, 487 F.2d at 606); *see also Gilmore v. Zimmerman*, 793 F.2d 564, 571 (3d Cir. 1986) (concluding that *Jerry* "is inconsistent with . . . *Johnson*").

[10] *United States v. Foy*, 28 F.3d 464, 471 n.13 (5th Cir. 1994). The government acknowledges that that statement is *dictum*.

the government's objection—of the two lesser-included offenses, then moved to dismiss the greater offenses on double-jeopardy grounds. *Id.* In rejecting that claim, the Court applied two concepts that relate to attachment and termination.

First, although attachment occurs where double-jeopardy "purposes and policies are implicated," *Serfass*, 420 U.S. at 388, *Johnson*, 467 U.S. at 501, concluded that no double-jeopardy interest "is implicated" in the "acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending." Thus, although *Sanchez* had suggested the opposite,[11] double jeopardy did not bar prosecution of a greater offense after a plea of a lesser-included offense.

Second, the Court applied a rationale reminiscent of termination's requirement that proceedings "run their full course" before a defendant can successfully invoke double jeopardy. *Lydon*, 466 U.S. at 308 (quotation marks and citation omitted). Specifically, in *Johnson*, 467 U.S. at 502, the Court sought to ensure that the government has "one full and fair opportunity to convict those who have violated its laws."

Thus, instead of expressly determining whether jeopardy attached and terminated, the Court analyzed (1) "finality" and (2) "prevention of prosecutorial overreaching," concluding that "[n]o interest . . . protected by the Double Jeopardy Clause [was] implicated" in that situation. *Id.* at 501. Although that framework differs from the attachment and termination bookends that the Court employs when examining a trial, *Johnson* recognized differences between guilty pleas and trials.[12] Specifically, guilty pleas provide

---

[11] *See Sanchez*, 609 F.2d at 762 ("[A]cceptance of a guilty plea to [a lesser-included] charge would bar later prosecution on the [greater] charge.").

[12] *Cf. Johnson*, 467 U.S. at 500 n.9 (concluding, in the context of a collateral-estoppel claim based on the Double Jeopardy Clause, that guilty pleas are "not the same as

prosecutors no "opportunity to marshal [their] evidence and resources." *Id.* A defendant can plead guilty even over the government's objection. *Id.* at 494. That distinction undermines the assumption of lower courts—which infected *Sanchez*—that guilty pleas are relevantly analogous to jury verdicts and that jeopardy, therefore, attaches upon acceptance of a guilty plea.

Nonetheless, our opinions have continued to recite *Sanchez*'s rule that jeopardy attaches upon acceptance of a guilty plea.[13] We must decide whether *Johnson* abrogated that statement. Brune contends that, under *Sanchez*, jeopardy attaches upon acceptance of a guilty plea. The government contends that *Johnson* rejected *Sanchez*'s double-jeopardy concerns, so jeopardy does not always attach upon acceptance of a guilty plea. We agree because (1) *Johnson* abrogated *Sanchez*'s statement about attachment, (2) Brune's counterarguments are not persuasive, and (3) the rule of orderliness does not preclude that conclusion.

1.

*Johnson* abrogated *Sanchez*'s statement regarding attachment. The First[14] and Third[15] Circuits agree that, under *Johnson*, jeopardy does not always attach upon acceptance of a guilty plea. The Second Circuit implies that jeopardy attaches upon acceptance of a guilty plea[16] and treats *Johnson* as an exception to that rule, which applies only where (1) the prosecutor

---

. . . adjudication[s] on the merits after full trial").

[13] *See, e.g.*, *United States v. Jones*, 733 F.3d 574, 580 (5th Cir. 2013); *see also* Part II.A.3.b, *infra*.

[14] *See United States v. Santiago Soto*, 825 F.2d 616, 619 (1st Cir. 1987).

[15] *See Gilmore*, 793 F.2d at 571.

[16] *See Morris v. Reynolds*, 264 F.3d 38, 49 (2d Cir. 2001) ("[T]he Supreme Court has established that, after a court accepts defendant's guilty plea to a lesser included offense, prosecution for the greater offense violates the Double Jeopardy Clause.").

objects to a plea of a lesser-included offense and (2) and the charge on the greater offense remains pending.[17]   The Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits either largely ignore *Johnson*[18] or skirt the issue.[19]

We conclude that jeopardy does not always attach upon acceptance of a guilty plea.  Two lines of reasoning support that conclusion.

a.

*Sanchez*'s rule about attachment is inconsistent with *Johnson*.  Under *Sanchez*, jeopardy attaches upon acceptance of a guilty plea.  *Sanchez*, 609 F.2d at 762.  Moreover, lesser-included and greater offenses constitute the "same offense" for double-jeopardy purposes.  *Brown v. Ohio*, 432 U.S. 161, 166 n.6 (1977).  Thus, if *Sanchez* were correct that jeopardy attaches upon acceptance of a guilty plea of a lesser offense, then—under Supreme Court precedent[20]—a successive prosecution for a greater offense would implicate double-jeopardy interests.[21]   Consequently, if jeopardy had attached upon

---

[17] *See Morris*, 264 F.3d at 49 ("In contrast, the Double Jeopardy Clause is not offended when the greater offenses charged in the indictment remain 'pending' at the time of a guilty plea, and when the prosecution objects to the plea to a lesser included offense.").

[18] *See United States v. Bearden*, 274 F.3d 1031, 1037–38 (6th Cir. 2001); *United States v. Baggett*, 901 F.2d 1546, 1548 (11th Cir. 1990); *United States v. Patterson*, 381 F.3d 859, 864 (9th Cir. 2004); *but see United States v. Patterson*, 406 F.3d 1095, 1097 (9th Cir. 2005) (Kozinski, J., dissenting from denial of rehearing en banc).

[19] *See United States v. Wampler*, 624 F.3d 1330, 1341 (10th Cir. 2010); *Bally v. Kemna*, 65 F.3d 104, 108 (8th Cir. 1995).

[20] Attachment occurs where double-jeopardy "purposes and policies are implicated." *Serfass*, 420 U.S. at 388.  It follows that, if jeopardy attaches *vis-à-vis* a lesser-included offense, then prosecution of a greater offense would have double-jeopardy implications.

[21] *Sanchez*, 609 F.2d at 762 (concluding that, because jeopardy attaches upon acceptance of a guilty plea, "acceptance of a guilty plea to [a lesser-included] charge would bar later prosecution on the [greater] charge").  Brune likewise contends that, because jeopardy allegedly attaches upon acceptance of a guilty plea, "[a]cceptance of a plea to a

No. 19-11360

acceptance of Johnson's guilty plea to the lesser-included offense, then prosecution of him for the greater offense would have had double-jeopardy consequences.[22]

But the government's prosecution of Johnson for the greater offense did not invoke double-jeopardy interests.[23] It necessarily follows that jeopardy did not attach upon the court's acceptance of Johnson's guilty plea of the lesser-included offense. Thus, under *Johnson* and contrary to *Sanchez*, jeopardy does not always attach upon acceptance of a guilty plea.

The Third Circuit came to a similar conclusion. Although the court had previously held that "jeopardy . . . attached with the acceptance of [a] guilty plea," *Jerry*, 487 F.2d at 606, the court later concluded that *Jerry*'s statement about attachment was "only an assumption," which "is inconsistent with . . . *Johnson*," *Gilmore*, 793 F.2d at 571. Importantly, *Jerry* was the sole basis for *Sanchez*'s statement that jeopardy attaches upon acceptance of a guilty plea. *See Sanchez*, 609 F.2d at 762 (citing *Jerry*, 487 F.2d at 606).

In sum, *Sanchez*'s rule about attachment is inconsistent with *Johnson*. Moreover, *Johnson* abrogated *Sanchez*'s sole buttress—*Jerry*. It is no surprise, then, that Brune concedes that *Sanchez* and *Johnson* are in conflict.[24]

---

lesser-included charge bars later prosecution on the associated greater charge."

[22] *See Patterson*, 406 F.3d at 1097 (Kozinski, J., dissenting from denial of rehearing en banc) ("If jeopardy had attached when [Johnson] pled guilty to the lesser offenses, the Double Jeopardy Clause would have barred the state from prosecuting him.").

[23] *See Johnson*, 467 U.S. at 501 (concluding that "acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending" does not implicate any "interest . . . protected by the Double Jeopardy Clause").

[24] Brune acknowledges that "*Johnson* limits . . . or gives some exceptions to *Sanchez*."

No. 19-11360

b.

*Johnson*'s holding has the hallmarks of attachment, not some other facet of double jeopardy. For instance, attachment occurs at the "point in criminal proceedings at which [double-jeopardy] purposes and policies are implicated."[25] Consistently with that concept, *Johnson*, 467 U.S. at 501, held that "[n]o interest . . . protected by the Double Jeopardy Clause is implicated" in that situation. *Johnson*'s focus on the threshold inquiry—whether double jeopardy is even implicated in the first place—thus sounds in attachment.

Conversely, *Johnson* does not resemble an exception to the double-jeopardy prohibition.[26] For instance, where the Supreme Court applies such an exception, it first "assume[s] that jeopardy attached" and then asks whether an exceptional circumstance "removed the double jeopardy bar." *Ricketts*, 483 U.S. at 8. *Johnson* neither assumed that jeopardy attached nor used language about removing the double-jeopardy bar.

Finally, although *Johnson*'s holding appears to implement the policy behind termination, *see* Part II.A, *supra*, it does not appear to engraft termination's legal test onto plea proceedings. For instance, to establish that jeopardy did not terminate after a trial, a prosecutor must show a "manifest necessity" to "retry the defendant." *Richardson*, 468 U.S. at 323–24 (quotation marks and citation omitted). *Johnson* did not, however, employ anything akin

---

[25] *Serfass*, 420 U.S. at 388; *see also United States v. Jorn*, 400 U.S. 470, 480 (1971) ("Thus the conclusion that 'jeopardy attaches' when the trial commences expresses a judgment that the constitutional policies underpinning the Fifth Amendment's guarantee are implicated at that point in the proceedings.").

[26] Brune's counsel suggested at oral argument that *Johnson* might constitute an exception to *Sanchez*'s rule about attachment—not to the double-jeopardy prohibition in general. And, even if he is right in that interpretation of *Johnson*, we still must apply *Johnson*'s framework to see whether that exception would apply.

No. 19-11360

to the manifest-necessity standard.[27]  In fact, the First and Third Circuits, which had attempted to graft that standard onto pleas, concluded that *Johnson* was inconsistent with those precedents.  *See Soto*, 825 F.2d at 619; *Gilmore*, 793 F.2d at 571.

In short, *Johnson*'s holding has more to do with attachment than with termination or an exception to the double-jeopardy bar.

### 2.

Brune raises two counterarguments.[28]  Neither is persuasive.

### a.

The Supreme Court said—about a century ago, in a case that didn't mention double jeopardy—that "[a] plea of guilty . . . is itself a conviction." *Kercheval v. United States*, 274 U.S. 220, 223 (1927).  And double jeopardy prohibits "a second prosecution for the same offense after conviction."

---

[27] *See Johnson*, 467 U.S. at 494–502; *Soto*, 825 F.2d at 619 (concluding that, under *Johnson*, "it becomes unnecessary to demonstrate 'manifest necessity' to warrant a judicial vacation of a guilty plea").

[28] Additionally, Brune contends, for the first time in his reply brief, that *Sanabria v. United States*, 437 U.S. 54, 69 (1978), stands for the proposition that "final judgment as to one substantive charge contained in the single count of the information bars future prosecution of [*sic*] other charge contained in the same count."  "We ordinarily disregard arguments raised for the first time in a reply brief."  *Cotropia v. Chapman*, 978 F.3d 282, 289 n.14 (5th Cir. 2020) (cleaned up).  Even if he had properly presented that argument, it would fail for two reasons.

First, the trial court acquitted Sanabria after trial had begun, *Sanabria*, 437 U.S. at 59, and the Court concluded that "a verdict of acquittal . . . may not be reviewed . . . without putting the defendant twice in jeopardy," *id.* at 64 (cleaned up).  Here, the court accepted Brune's guilty plea—it did not acquit him.  Moreover, the acceptance of a guilty plea, at least where a charge remains pending, "has none of the implications" of an acquittal after trial has already begun.  *Johnson*, 467 U.S. at 501–02.  Second, the acquittal in *Sanabria* constituted a final judgment.  *Sanabria*, 437 U.S. at 72–73.  But the court modified its acceptance of Brune's guilty plea before it sentenced him or entered judgment.

*Johnson*, 467 U.S. at 498 (quotation marks and citation omitted). Thus, if we myopically weld those precedents together, the argument goes, attachment must occur upon the plea of guilty, because that is when the conviction occurs. *See Morris*, 264 F.3d at 49. The *Johnson* dissenters made that sort of argument and lost.[29] It is no surprise, then, that, besides its cameo in *Morris*, that argument largely inhabits pre-*Johnson* concurrences[30] and student notes.[31] Brune raises it here, and it fails for three reasons.

First, that theory is inconsistent with *Johnson*. If Johnson's guilty plea of a lesser-included offense constituted his conviction for double-jeopardy purposes, then the government's subsequent prosecution would have implicated double-jeopardy interests. But the subsequent prosecution did not do that. *Johnson*, 467 U.S. at 501. And, to the extent that *Kercheval* conflicts with *Johnson*, we must follow *Johnson* as the Court's later pronouncement.

Second, Brune cherry-picks *Kercheval*'s language. In *Kercheval*, 274 U.S. at 225, the Court had nothing to say about double jeopardy; it concluded that evidence of a withdrawn guilty plea is inadmissible at trial. In any event, a more vigorous examination of *Kercheval* undermines Brune's argument. Although Brune notes *Kercheval*'s statement that a guilty plea is "conclusive" of guilt, he omits its observation that it would be wrong to "hold [a withdrawn] plea conclusive." *Id.* at 224. *Kercheval* even noted that, in some

---

[29] *See Johnson*, 467 U.S. at 503 (Stevens, J., dissenting) (concluding that "a plea of guilty has the same legal effect as a conviction" and that double jeopardy "prohibits prosecution of a defendant for a greater offense when he has already been convicted on the lesser included offense" (cleaned up)). That argument also made a brief appearance in Ninth Circuit *dictum*. *See United States v. Smith*, 912 F.2d 322, 324–25 (9th Cir. 1990).

[30] *See United States v. Combs*, 634 F.2d 1295, 1300 (10th Cir. 1980) (McKay, J., concurring in part and dissenting in part).

[31] Andrew Cassady, Comment, *No Rest for the Weary: Double Jeopardy Implications of Vacating a Defendant's Guilty Plea*, 81 U. Cin. L. Rev. 1539, 1551 (2013).

circumstances, courts may "vacate a plea of guilty," "substitute a plea of not guilty," and "have a trial." *Id.* Brune does not engage with any of that language. We thus decline to graft *Kercheval*'s inapposite, cherry-picked statement onto the double-jeopardy context in a manner that undermines *Johnson*.

Third, Brune's reasoning places more weight on *Kercheval*'s use of "conviction" than it can bear. *See id.* at 223. Because a judgment of conviction can occur only after sentencing, Fed. R. Crim. P. 32(k)(1), a "defendant ha[s] not been formally convicted" until "entry of judgment and sentencing on the accepted guilty plea."[32]

### b.

Some scholars suggest that jeopardy attaches where "the risks of injury" are sufficiently great. LaFave et al., *supra*, § 25.1(d) (quotation marks and citation omitted). Moreover, a guilty plea exposes a defendant to risks, because it constitutes an admission of material facts along with a waiver of myriad rights. *Combs*, 634 F.2d at 1300 (McKay, J., concurring in part and dissenting in part). Thus, Brune contends that, "[w]ith the risk of a determination of guilt, jeopardy attaches." That argument fails for two reasons.

First, Brune confuses necessary and sufficient conditions. Citing *Serfass*, 420 U.S. at 391–92, he contends that a risk of a determination of guilt is sufficient to show attachment.[33] But he shrewdly omits any quotation,

---

[32] *Combs*, 634 F.2d at 1298; *see also Mitchell v. United States*, 526 U.S. 314, 325 (1999) (rejecting the notion that "incrimination is complete once guilt has been adjudicated," if a "sentence has yet to be imposed" (quoting *Estelle v. Smith*, 451 U.S. 454, 462 (1981)).

[33] He also contends that jeopardy attaches whenever a procedure begins before a trier of fact who can determine guilt. He is right that double jeopardy "does not come into play until a proceeding begins before a trier having jurisdiction to try the question of the guilt or innocence of the accused." *Serfass*, 420 U.S. at 391 (quotation omitted). But that does not mean that identification of a procedure before a trier of fact is sufficient to show

because *Serfass* really says that, "[w]ithout risk of a determination of guilt, jeopardy does not attach." *Id.* Thus, *Serfass* said that risk is *necessary*—not *sufficient*—to show attachment. That makes sense, because, before trial, a defendant must conduct motions and jury selection, which "may decide the defendant's case." *Crist*, 437 U.S. at 49 (Powell, J., dissenting). Yet, even with exposure to those risks, jeopardy does not attach until later. *Id.* Thus, pointing to some risk of a determination of guilt is not enough to show that jeopardy attaches.

Second, Brune's single-minded focus on risks ignores the government's interest in completing its prosecution. Yet, *Johnson*, 467 U.S. at 502, considered it relevant that "ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws." A singular focus on risks would allow a defendant to place himself in jeopardy—by pleading guilty—and thus "use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution." *Id. Johnson*, therefore, bars us from focusing on risk to the exclusion of the government's interest in completing its prosecution.

3.

Given those considerations, jeopardy does not always attach upon acceptance of a guilty plea.[34] We thus join the majority of circuits that have analyzed the impact of *Johnson* and, in doing so, we affirm our only previous

---

attachment. For instance, procedures—such as motions and opening statements—occur in front of a trier of fact before jeopardy attaches in a bench trial. *See Crist*, 437 U.S. at 49 (Powell, J., dissenting).

[34] *Accord Patterson*, 406 F.3d at 1097 (Kozinski, J., dissenting from denial of re-hearing en banc); *Soto*, 825 F.2d at 620; *Gilmore*, 793 F.2d at 571; LaFave et al., *supra*, § 25.1(d) (concluding that the rule that jeopardy attaches upon acceptance of a guilty plea is "an oversimplification, one that fails to speak to the many situations in which a guilty plea will not bar further prosecution").

analysis of that issue, namely that *Johnson* "effectively reject[ed] the double jeopardy concerns expressed . . . in *Sanchez*." *Foy*, 28 F.3d at 471 n.13. The rule of orderliness does not preclude that conclusion, because (a) *Sanchez* made pronouncements about attachment only in now-abrogated *dicta*, and (b) none of our later opinions reciting *Sanchez*'s rule about attachment grappled with whether *Johnson* rejected *Sanchez*'s rule.

a.

*Sanchez* made conclusions about attachment only in *dicta*. For instance, although *Sanchez*, 609 F.2d at 762, stated that "[j]eopardy attaches with the acceptance of a guilty plea," the trial court accepted Sanchez's guilty plea only conditionally, so there was no double-jeopardy violation, *id.* at 763. Because any successive prosecution occurred before acceptance of the guilty plea, we needed only to conclude—as then-Judge Gorsuch did in his analysis of that issue—that jeopardy does not attach *at least* until acceptance of a guilty plea.[35]

Because the broader assumption about attachment was unnecessary to our decision, that "broad and unnecessary language of [*Sanchez*] [can]not be considered binding authority."[36] Moreover, because *Johnson* "implicitly overrule[d]" *Sanchez*'s statement about attachment, "we have the . . . obligation to declare and implement this change in the law." *Hines v. Quillivan*, 982 F.3d 266, 271 (5th Cir. 2020) (quotation marks and citation omitted). In short, *Sanchez*'s statements about attachment are abrogated *dicta*.

---

[35] *See Wampler*, 624 F.3d at 1341 ("[J]eopardy does not attach *at least* until the guilty plea is accepted, and perhaps not until even later." (emphasis added)); *cf. Ricketts*, 483 U.S. at 8 ("[J]eopardy attache[s] *at least* when [a defendant] [is] sentenced." (emphasis added)).

[36] *Texaco Inc. v. Duhé*, 274 F.3d 911, 920 n.13 (5th Cir. 2001) (citing *Kastigar v. United States*, 406 U.S. 441, 454–55 (1972)).

No. 19-11360

b.

We have repeated *Sanchez*'s rule about attachment in three, post-*Johnson*, published cases.[37] None of those opinions, however, grappled with whether *Johnson* rejected *Sanchez*'s rule.[38] And, under the rule of orderliness, "[a]n opinion restating a prior panel's ruling does not *sub silentio* hold that the prior ruling survived an uncited Supreme Court decision." *Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018). Thus, "the rule of orderliness has little persuasive force when the prior panel decision at issue conflicts with a Supreme Court case to which the subsequent panel decision is faithful." *Kennedy v. Tangipahoa Par. Libr. Bd. of Control*, 224 F.3d 359, 370 n.13 (5th Cir. 2000). Because our prior opinions did not analyze whether *Johnson* abrogated *Sanchez*'s rule about attachment, we are not bound by their rote recitations of *Sanchez*'s rule.[39]

---

[37] *See Jones*, 733 F.3d at 580; *United States v. Kim*, 884 F.2d 189, 191 (5th Cir. 1989); *Fransaw v. Lynaugh*, 810 F.2d 518, 523 (5th Cir. 1987).

[38] *See Jones*, 733 F.3d at 580; *Kim*, 884 F.2d at 191; *Fransaw*, 810 F.2d at 523.

[39] *See Gahagan*, 911 F.3d at 302. The parties also debate the district court's statutory power to correct an erroneous citation in an order accepting a guilty plea, but a "court may at any time correct a clerical error in a[n] . . . order." Fed. R. Crim. P. 36. We have "used Rule 36 to correct errors in the judgment relating to . . . the offense underlying a plea." *United States v. Cooper*, 979 F.3d 1084, 1089 (5th Cir. 2020), *cert. denied*, 2021 WL 1073631 (U.S. Mar. 22, 2021) (No. 20-7122).

Specifically, where a "judgment refers to the offense of conviction" as one offense, but "the record indicates that [the defendant] pleaded guilty to" another offense, that "reflects a clerical error in the written judgment." *United States v. McCoy*, 819 F. App'x 262, 262 (5th Cir. 2020) (per curiam). Given the nine references to subparagraph B, "the record indicates that [Brune] pleaded guilty" to it. *Id.* Moreover, the "transcript of the plea hearing makes clear that [Brune] pleaded guilty" of subparagraph B, given its multiple references thereto. *Cooper*, 979 F.3d at 1089. Finally, the district court's modification of its order did not "contradict[] the court's and the parties' intentions as to the judgment." *United States v. Crawley*, 463 F. App'x 418, 421 (5th Cir. 2012) (per curiam). As Brune's counsel frankly admitted, "the intention of the parties was for Mr. Brune to" plead guilty to subparagraph B. The district court had statutory authority to correct its clerical error.

No. 19-11360

## B.

Because jeopardy does not always attach upon acceptance of a guilty plea, we next determine the test for ascertaining when it attaches.

*Johnson* had to address that same question. Specifically, the Court had held that the Double Jeopardy Clause barred prosecution of a greater offense after a court accepted a guilty plea and sentenced for a lesser-included offense. *Brown*, 432 U.S. at 169, 162. Because *Johnson* also involved a successive prosecution of a greater offense after a plea of a lesser-included offense, the Court needed to distinguish *Brown*—which implicated double jeopardy—from *Johnson*—which did not. *Johnson*, 467 U.S. at 496. To do so, the Court determined that "the principles of finality and prevention of prosecutorial overreaching applied in *Brown*" were absent in *Johnson*. *Id.* at 501.

*Johnson* thus "provided a framework . . . for determining whether jeopardy attaches when a defendant pleads guilty."[40] Courts must examine "the twin aims of the Double Jeopardy Clause: protecting a defendant's finality interests and preventing prosecutorial overreaching." *Patterson*, 406 F.3d at 1097 (Kozinski, J., dissenting from denial of rehearing en banc).

The Second Circuit disagrees, concluding that the lodestar of *Johnson*'s analysis was the fact that the greater charge remained pending at the time Johnson pleaded guilty of the lesser-included offense.[41] *Johnson*, however, used "pending" once. *Johnson*, 467 U.S. at 501. Moreover, it did so only within its analysis of finality and prosecutorial overreach. *See id.* To be

---

[40] *Patterson*, 406 F.3d at 1097 (Kozinski, J., dissenting from denial of rehearing en banc); *see also Soto*, 825 F.2d at 620 (examining the potential for prosecutorial overreach and a defendant's finality interests to determine whether jeopardy attached).

[41] *See Morris*, 264 F.3d at 50 ("[T]he only question is whether the felony charge was 'pending.'").

sure, whether a charge of a greater offense was pending may prove relevant, but that was not the Court's guiding principle in distinguishing *Brown*.

## C.

To determine whether jeopardy attached, we consider (1) Brune's finality interest and (2) prevention of prosecutorial overreach.

### 1.

*Johnson* employed three considerations in ascertaining a defendant's finality interest.  None is present here.

First, the Court asked whether the situation before it involved any of the "implications of an implied acquittal which results from a verdict . . . rendered by a jury."  *Id.* at 501–02 (cleaned up).  "The mere acceptance of a guilty plea," however, "does not carry the same expectation of finality and tranquility that comes with a jury's verdict."  *Soto*, 825 F.2d at 620.  Moreover, given a court's ability to correct errors, an erroneous citation in an order accepting a plea does not imply an acquittal. Fed. R. Crim. P. 36.

Second, *Johnson* asked whether "the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial."  *Johnson*, 467 U.S. at 501.  The government had no opportunity to marshal evidence against Brune, however, because his plea proceedings "[did] not involve the ordeal of a trial."  *Soto*, 825 F.2d at 618.

Third, *Johnson*, 467 U.S. at 501, noted that the charges of the greater offenses were pending, which was relevant presumably because "Johnson could have foreseen a prosecution on the pending charges," *Soto*, 825 F.2d at 619.  Evidence abounds that Brune foresaw a subparagraph B prosecution.  His factual resume referenced subparagraph B five times, reciting its citation, penalty range, and 50-gram threshold.  His waiver of indictment cited that subparagraph.  At his arraignment, the government referenced that subpara-

graph's elements and penalty range.  Finally, Brune's counsel conceded that "the intention of the parties was for Mr. Brune to enter a guilty plea" to subparagraph B.  Given that evidence, Brune's finality interest is even more miniscule than that of the defendant in *Johnson*: Johnson was merely *on notice* of his greater offense; Brune *intended* to plead guilty of his.

In short, Brune intended to plead guilty to subparagraph B.  Because the government botched its citations, he now seeks "an undeserved windfall by shaving" years off his sentence.  *Patterson*, 406 F.3d at 1095 (Kozinski, J., dissenting from denial of rehearing en banc).  In other words, Brune seeks to "use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution" of subparagraph B—a contingency that *Johnson* sought to avoid.[42]  Brune's finality interest is nil.

2.

*Johnson* employed two considerations in identifying prosecutorial overreach.  First, in *Johnson*, 467 U.S. at 501–02, there was no overreach where the charge for the greater offense remained "pending."  In contrast, some authorities suggest there might be overreach where the government charges a defendant "with a second crime after getting him to plead guilty" with a plea agreement.[43]  The government did not bring new charges against Brune.  Nor did it dupe him with a plea agreement—there never was one to

---

[42] *Johnson*, 467 U.S. at 502.  Brune suggests that *Johnson* is limited to cases in which a defendant proactively games the system—not where he passively stumbles across a windfall and then invokes double jeopardy.  *Johnson*, however, did not limit its reasoning to defendants who proactively game the system.

[43] *See Patterson*, 406 F.3d at 1099 (Kozinski, J., dissenting from denial of rehearing en banc); *see also* LAFAVE ET AL., *supra*, § 25.1(d) (finding potential for prosecutorial overreach where the government prosecutes a greater offense after "enter[ing] into an agreement that a greater charge will be dismissed in exchange for the defendant's plea to a lesser charge").

begin with.

Second, *Johnson*, 467 U.S. at 502, considered whether "ending prosecution now would deny the [government] its right to one full and fair opportunity to convict those who have violated its laws." Because Brune's case has not gone to trial, and the government has not dismissed the charge for subparagraph B, the government has not yet had one *full* opportunity to convict him of subparagraph B. And there's nothing *unfair* to Brune about that result: The government seeks to prosecute him for the only charge to which Brune himself pleaded guilty.

In sum, the Double Jeopardy Clause "was not written or originally understood to pose an insuperable obstacle to the administration of justice in cases"—like Brune's—"where there is no semblance of . . . oppressive practices." *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018) (quotation marks and citation omitted). Correction of a typo isn't oppressive.

Because Brune's finality interest is low, and there is no evidence of prosecutorial overreach, jeopardy did not attach upon the court's acceptance of Brune's guilty plea. There is no double-jeopardy violation.

## III.

Brune avers that the district court clearly erred in applying an "importation" sentencing enhancement. We disagree.

Under U.S.S.G. § 2D1.1(b)(5), a court can increase a defendant's offense level by two if his offense "involved the importation of . . . methamphetamine." "We review the district court's factual determination that an offense involved the importation of methamphetamine for clear error."[44]

---

[44] *United States v. Nimerfroh*, 716 F. App'x 311, 315 (5th Cir. 2018) (per curiam); *see also United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012).

No. 19-11360

We will find no clear error so long as the court's conclusion is "plausible in light of the record read as a whole." *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019) (quotation marks and citation omitted).

Brune sold at least 50–75 pounds of meth over nine months. His supplier was a member of the Michoacán Cartel based in Dallas, and that cartel borrows its name from a Mexican state. Those facts support the inference that some of Brune's drugs were imported.[45] The importation finding is "plausible in light of the record read as a whole," so there is no clear error.[46]

AFFIRMED.

---

[45] *See United States v. Castillo-Curiel*, 579 F. App'x 239, 239 (5th Cir. 2014) (per curiam) (considering as relevant to application of the importation enhancement the fact that "the methamphetamine was associated with two Mexican drug cartels").

[46] *Dinh*, 920 F.3d at 310 (quotation marks and citation omitted). In an unpublished opinion, we concluded that "the mere reference to a cartel is [not] sufficient to prove by a preponderance of the evidence that [a defendant] was dealing with imported methamphetamine." *See Nimerfroh*, 716 F. App'x at 316. *Nimerfroh* is distinguishable because the cartel had not been identified, but the evidence shows that Brune dealt specifically with the Michoacán Cartel. *Id.*