# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 13, 2020

Lyle W. Cayce
Clerk

No. 19-60233

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

FREDERICK ARAYATANON,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:18-CR-52-1

Before DENNIS, HIGGINSON, and WILLETT, *Circuit Judges*.
STEPHEN A. HIGGINSON, *Circuit Judge*:

Frederick Arayatanon was convicted by a jury of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine under 21 U.S.C. § 846 and sentenced as a career offender to life in prison. Arayatanon appeals his conviction and sentence. We AFFIRM.

I.

Arayatanon was charged with a single-count indictment for conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846.[1]

At trial, the government presented evidence that, beginning in the summer of 2017, Arayatanon entered into an agreement to sell drugs with two coconspirators, Tuyen Ngoc Le and Demetrius Darnell Mason.[2] Arayatanon shipped packages of drugs from California to Le's address in Biloxi, Mississippi. The packages originally contained marijuana, but later also included methamphetamine. Arayatanon would send the packages overnight to Mississippi through FedEx to Le, who provided the packages to Mason. Mason would pay Le, and Le in turn deposited cash in Arayatanon's Wells Fargo bank account. The deposits were made at various Wells Fargo branches in Mississippi, which Arayatanon could then access through Wells Fargo branches and ATMs in California. Nine packages were sent in this fashion from July through November 2017.

In November 2017, DEA agents received reports that large amounts of marijuana were being distributed from Le's Biloxi address. While surveilling the house, DEA agents observed the delivery of the last of these packages to Le's address on November 29, 2017, and Le subsequently placed the package in Mason's car. Following a car chase, officers apprehended Mason and recovered the package containing 1 pound of marijuana and 882 grams (or nearly 2 pounds) of methamphetamine. After executing a search warrant, agents found $9,500 in cash in Le's purse, and Le was subsequently arrested. Using records obtained from Le's phone, officers identified

---

[1] The underlying offense, possession with intent to distribute 500 grams or more of methamphetamine, violates 21 U.S.C. § 841(a)(1), (b)(1)(A).

[2] Both Le and Mason pleaded guilty with cooperation agreements prior to Arayatanon's trial.

Arayatanon and subsequently arrested him while he was crossing the border from Mexico to the United States.

While Arayatanon and his coconspirators never met in person, they had communicated by phone, including through WhatsApp messages and FaceTime. Arayatanon used various other aliases, and was known to his Mississippi coconspirators primarily as "Khoi."[3] All of these aliases were connected to Arayatanon using phone and bank account records, and testimony from Le, Mason, and the agents who conducted the investigation. The government also played at trial audio recordings of calls Arayatanon made while he was in custody. These calls included references to Arayatanon as "Khoi." Another call included a conversation in which Arayatanon says he sent packages "once or twice."

Arayatanon did not testify and did not present any evidence. At the close of the three-day trial, the jury returned a unanimous guilty verdict. Arayatanon was sentenced to life in prison.

## II.

On appeal, Arayatanon argues that during his trial, the district court abused its discretion by excusing two case agents from sequestration under Federal Rule of Evidence 615, and by admitting jailhouse telephone calls that he argues undermined his presumption of innocence before the jury. Arayatanon also asserts that the district court erred at sentencing in calculating his offense level based on an incorrect drug quantity, imposing a two-level enhancement because the drugs were imported, and applying the career offender enhancement. Finding no error, we affirm.

---

[3] He was identified in Le's phone as "Khoi Cali."

### A.

First, Arayatanon asserts that the district court erred in exempting both of the government's case agents from sequestration pursuant to Federal Rule of Evidence 615.

We review a district court's compliance with Rule 615 for an abuse of discretion, and we will reverse only if Arayatanon demonstrates prejudice. *United States v. Green*, 324 F.3d 375, 380 (5th Cir. 2003). Rule 615 provides that at the request of a party, "the court must order witnesses excluded so that they cannot hear other witnesses' testimony." FED. R. EVID. 615. However, "this rule does not authorize excluding . . . a person whose presence a party shows to be essential to presenting the party's claim or defense." FED. R. EVID. 615(c). While district judges are afforded broad discretion in its application, they must remain mindful of the purpose behind the rule. "Its main purpose is to aid in detecting testimony that is tailored to that of other witnesses and is less than candid." *United States v. Wylie*, 919 F.2d 969, 976 (5th Cir. 1990).

At the beginning of trial, Arayatanon invoked Rule 615 and requested that one of the government's two agents be sequestered because both agents were identified as possible witnesses. The government responded that because both agents had acted as the case agents at different times, each was necessary in the presentation of its case. Based on the government's representation, the district court overruled Arayatanon's objection and permitted both agents to stay. At trial, only one of the case agents testified.

Arayatanon has made no showing to overcome the government's representation that both agents were essential. To the extent Arayatanon asserts that he had the right to have one of the case agents sequestered, this argument is unavailing. Rule 615 does not limit the district court's discretion to excuse only one case agent from sequestration. *See United States v. Alvarado*, 647 F.2d 537, 540 (5th Cir. 1981) ("[T]he decision as to how many will be excused from sequestration is just as discretionary with the trial judge

as who will be excused."); *see also United States v. Payan*, 992 F.2d 1387, 1394 (5th Cir. 1993) (finding no reversible error where district court permitted two case agents to both remain and testify).  In any event, Arayatanon has not shown the resulting prejudice that is required to warrant reversal of his conviction.

B.

Arayatanon next contends that the district court violated his due process rights by admitting the jailhouse telephone calls.  He argues that because the calls indicated to the jury that he was incarcerated, they undermined his presumption of innocence.

We review "a district court's evidentiary rulings for abuse of discretion, subject to harmless error review."  *United States v. Isiwele*, 635 F.3d 196, 199 (5th Cir. 2011).  A district court "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."  *United States v. Ebron*, 683 F.3d 105, 133 (5th Cir. 2012) (internal quotation marks and citation omitted).

Here, the government sought to play four telephone calls Arayatanon had with other people while he was incarcerated prior to trial.  The government introduced these calls to show Arayatanon's reluctance to be referred to by his nickname "Khoi," as he was known to his Mississippi coconspirators and identified in Le's phone.  Three of the recordings refer to Arayatanon as "Khoi," despite Arayatanon's cautions to refer to him only as "Fred."  In one of those calls, Arayatanon also refers to his inmate number.  The fourth call does not reference "Khoi" but includes a conversation where Arayatanon appears to admit sending packages "once or twice."[4]

---

[4] The government emphasized all four of the jail calls in its closing statement, including even replaying this last call.  Arayatanon neither objected to this at trial nor on appeal.  Rather, he argues only that the admission of the calls was prejudicial for the sole reason that the references to being in custody "undermined his presumption of

During a bench conference, the government offered to authenticate the jail calls outside the jury's presence to prevent the jury from learning Arayatanon was incarcerated. However, the district court declined to do so because the "credibility of those tape recordings are a matter that the jury will have to consider," including how the recordings were made and that they were not edited or tampered with. Arayatanon declined to stipulate to the recordings' authenticity.

The district court permitted the authentication to proceed because "the fact that [Arayatanon] may have been in custody at the time that he made certain phone calls" was not "a matter that should be kept a secret," and was not "in and of itself . . . prejudicial." The district court emphasized the precautions it took to ensure that Arayatanon was not presented in chains or a prison jumpsuit, and to conceal other security measures so that the jury would "not get the impression that any individual on trial is some type of dangerous criminal." Notably, too, the district court offered to provide a cautionary instruction "about the mere fact [Arayatanon] may have been at one time or maybe even now [is] in custody," which Arayatanon refused. The government subsequently elicited testimony from a correctional officer who testified how the inmates' calls were recorded and identified, including Arayatanon's calls. The calls were then played for the jury.

On appeal, Arayatanon argues that the district court's admission of the jail calls undermined his presumption of innocence. His sole argument is that their implication to the jury that he was in custody was akin to as if he "had been shackled during trial." Not so.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). For this reason,

innocence." Neither party addresses the government's closing statement in their briefing before us.

"visible" restraints such as shackles are inherently prejudicial and are prohibited absent a justifiable state interest such as courtroom safety. *Deck v. Missouri*, 544 U.S. 622, 629 (2005); *United States v. Hope*, 102 F.3d 114, 117–18 (5th Cir. 1996). Similarly, the Supreme Court prohibits requiring a defendant to appear before a jury in prison clothing because "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment" and is "likely to be a continuing influence throughout the trial." *Williams*, 425 U.S. at 504–05.

The admission of Arayatanon's jail calls did not pose the same constant and visible risk of prejudice as shackling, prison garb or other external signs of a defendant's incarceration or perceived threat to the community at large.[5] While Arayatanon may have been somewhat prejudiced by the fact that the jury learned the calls were recorded while he was in jail, we conclude that the reference to Arayatanon's incarceration, as revealed in the presentation of the jail calls, was not unfairly prejudicial. We do not hold that admission of recorded jail telephone calls can never be so unfairly prejudicial that a due process violation might result. But this is not such a case.

The district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. "A district court's ruling regarding Rule 403 is reviewed 'with an especially high level of deference to the district court, with reversal called for only rarely and only when there has been a clear abuse of discretion.'" *United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015) (quoting *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008)).

---

[5] *See, e.g.*, *United States v. Nicholson*, 846 F.2d 277, 278–79 (5th Cir. 1988) (plainclothes deputies seated next to a defendant with "a history of violent and unruly behavior" was not unduly prejudicial); *Holbrook v. Flynn*, 475 U.S. 560, 569–72 (1986) (uniformed officers seated behind defendant is not inherently prejudicial to undermine a defendant's right to a fair trial).

Arayatanon did not argue at trial, nor on appeal here, that these calls were not relevant or lacked probative value.[6] The district court did not abuse its discretion because the fact that Arayatanon had been in custody before trial was not unfairly prejudicial under these circumstances. *See also United States v. Johnson*, 624 F.3d 815, 821–22 (7th Cir. 2010) (distinguishing defendant's argument that the admission of jail calls was akin to a defendant wearing prison attire at trial under *Estelle v. Williams*, 425 U.S. 501 (1976), and finding no abuse of discretion in admitting the tapes under Rule 403).

Moreover, Arayatanon declined a limiting instruction to mitigate any lingering prejudice. Even in situations where the "risk of prejudice is high," the Supreme Court has held that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *accord United States v. Williams*, 620 F.3d 483, 492 (5th Cir. 2010). Consequently, the district court did not err in admitting the jail calls.

## C.

Arayatanon asserts that the district court erred at sentencing in determining the quantity of methamphetamine attributable to him for the purpose of calculating his base offense level under U.S.S.G. § 2D1.1(c). The PSR held Arayatanon responsible for 882 grams (nearly 2 pounds) of methamphetamine that were seized on November 29, 2017, plus 9 pounds of methamphetamine based on the FedEx shipments Arayatanon sent to Mississippi from September through November 2017. Arayatanon maintains that the government's evidence at trial contained conflicting evidence as to

---

[6] At trial, Arayatanon objected to the admission of the recordings for lack of foundation that it was "an exact copy of . . . the original." He further objected to the admission of the transcripts as "cumulative" and creating an "undue influence . . . on that particular piece of proof" for the jury. The district court overruled both objections, but gave a limiting instruction as to the purpose of the transcripts. Arayatanon does not challenge these rulings on appeal.

when Arayatanon sent the first package, and which packages contained methamphetamine instead of just marijuana. Consequently, he argues that the evidence established that he was responsible only for 9 pounds of methamphetamine instead of 11.

We review the district court's determination of drug quantity for clear error and will affirm the finding as long as it is "plausible in light of the record as a whole." *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (internal quotation marks and citation omitted). In determining drug quantities for sentencing purposes, the district court may rely on any relevant evidence which "'has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Gomez-Alvarez*, 781 F.3d 787, 796 (5th Cir. 2015) (quoting U.S.S.G. § 6A1.3(a)). A defendant who takes issue with facts presented in the PSR has the burden of demonstrating "that the information is materially untrue, inaccurate or unreliable." *Id.* (internal quotation marks and citation omitted). A defendant's mere objections at sentencing do not constitute competent rebuttal evidence. *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998).

Here, the drug-quantity determination in the PSR is sufficiently reliable even if based on a coconspirator's "imprecise" testimony, especially absent any competent rebuttal evidence from Arayatanon to refute the 11 pounds of methamphetamine attributed to him in the PSR. *See United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998). Moreover, contrary to Arayatanon's bare assertions on appeal, both the PSR and evidence presented at trial support this drug-quantity determination. In light of the record as a whole, the district court's factual finding as to the quantity of methamphetamine was more than plausible. *See id.*; *Betancourt*, 422 F.3d at 246. Thus, the district court did not err in relying on the PSR, as corroborated by the court's recollection of the evidence presented at trial, and adopting the PSR's drug-quantity determination.

D.

Arayatanon next challenges the application of the two-level enhancement under U.S.S.G. § 2D1.1(b)(5), contending that the evidence was insufficient to establish that the methamphetamine was imported. We review the district court's factual determination that § 2D1.1(b)(5) applies for clear error. *United States v. Serfass*, 684 F.3d 548, 553–54 (5th Cir. 2012).

Section 2D1.1(b)(5) provides for a two-level enhancement if the offense involved the importation of methamphetamine. U.S.S.G. § 2D1.1(b)(5). "The government must prove the facts underlying a sentencing enhancement by a preponderance of the evidence." *Serfass*, 684 F.3d at 553. The enhancement "applies when 'the offense involved the importation of . . . methamphetamine,' even if the defendant did not know that the methamphetamine was imported." *Id.* at 554 (alteration in original) (quoting U.S.S.G. § 2D1.1(b)(5)).

In support of this enhancement, the PSR stated that the methamphetamine seized on November 29, 2017, was 100% pure. DEA agents advised the probation officer that the methamphetamine "was likely imported into the United States" because "there are no known labs in the United States that can manufacture methamphetamine of this purity level." At sentencing, the district court also noted that "[Arayatanon] or individuals that were associated with [him] [made] trips to Mexico."

On appeal, Arayatanon argues that the district court erred because "the PSR lacks any discussion of importation aside from [his] travel to Mexico and the purity level." However, on this record, the district court could plausibly infer, by a preponderance of evidence, that the methamphetamine was imported. *See Serfass*, 684 F.3d at 550, 553. Arayatanon's principal argument on appeal that "[a] Mexican cartel could have manufactured the methamphetamine within the United States . . . with no importation required" is speculation that does not rebut the PSR. *See, e.g.*, *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) ("Because

no testimony or other evidence was submitted to rebut the information in the PSR, the district court was free to adopt the PSR's findings."). Thus, the district court did not clearly err in applying the § 2D1.1(b)(5) enhancement.

E.

Finally, Arayatanon contends that the district court erred in sentencing him as a career offender under U.S.S.G. § 4B1.1. Specifically, he argues that the district court erred in determining that there was reliable evidence to establish the existence of the requisite prior convictions.

We review the district court's application of the Sentencing Guidelines *de novo* and review its factual findings for clear error. *Gomez-Alvarez*, 781 F.3d at 791. Clear error review applies where, as here, the defendant challenges "a district court's conclusion that evidence submitted to prove the fact of a prior conviction bears 'sufficient indicia of reliability.'" *United States v. Ortega-Calderon*, 814 F.3d 757, 759 (5th Cir. 2016) (quoting U.S.S.G. § 6A1.3(a)); *id.* at 760 (distinguishing between the "legal inquiry" of whether a specific type of conviction qualifies for purposes of applying a sentencing enhancement and "the factual question of whether a defendant has been convicted—period"). "There is no clear error if the sentencing court's finding is plausible in light of the record as a whole." *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). This court will reverse on clear error review only if it is left with a "definite and firm conviction that a mistake has been committed" based on the entire evidence. *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006) (internal quotation marks and citation omitted).

The career offender enhancement applies if, *inter alia*, "the defendant has at least two prior felony convictions of . . . a controlled substance offense." U.S.S.G. § 4B1.1(a). The PSR determined that Arayatanon qualified as a career offender under § 4B1.1 based on two prior controlled substance convictions in California, first in 2009 and then again in 2013, both

for possession of a controlled substance (methamphetamine) with intent to sell, in violation of California Health & Safety Code § 11378.[7]

The PSR was initially prepared based on the criminal complaints received from the Clerk of Court in California and conviction information obtained from the Clerk's official website. At Arayatanon's request, sentencing was continued to permit defense counsel additional time to investigate additional documentation—including judgments—to rebut the PSR.

The probation office subsequently supplemented the PSR. While no judgment or additional documents directly from the 2009 conviction were produced, the additional documents from the 2013 conviction repeatedly referenced the 2009 conviction, including an amended charging document, a signed admission from Arayatanon that he had been convicted in 2009 of possession of a controlled substance with intent to sell, and a signed guilty plea stating both that Arayatanon was pleading guilty in 2013 to possession of a controlled substance with intent to sell *and* that he had been previously convicted in 2009 of the same charge. An abstract of judgment for Arayatanon's 2013 conviction was also included. At sentencing for the instant offense, Arayatanon presented no additional evidence, and the district court adopted the PSR's conclusions as to the prior convictions and applied the career offender enhancement.

The district court did not clearly err in concluding that the prior California convictions occurred. To start, Arayatanon's argument that the 2013 abstract of judgment is unreliable based on *United States v. Gutierrez-Ramirez*, 405 F.3d 352 (5th Cir. 2005) is misplaced. That case determined that it was error to exclusively rely on a California abstract of judgment to

---

[7] It is undisputed that a conviction under this statute qualifies as a predicate controlled substance offense. *See United States v. Olson*, 849 F.3d 230, 232 (5th Cir. 2017) (per curiam).

determine whether the defendant's prior conviction qualified as a drug trafficking offense, not whether it was sufficiently reliable to establish that a conviction occurred. *See Gutierrez-Ramirez*, 405 F.3d at 358–59; *see also United States v. Moreno-Florean*, 542 F.3d 445, 449 n.1 (5th Cir. 2008) ("California abstracts of judgment have sufficient indicia of reliability to support their probable accuracy such that the documents can be used as evidence of a prior conviction.").[8]

Moreover, contrary to Arayatanon's assertion that the documents contain "inconsistencies" as to how Arayatanon was sentenced, they are internally consistent regarding the fact of the 2009 and 2013 convictions. While the documents are not judgments, they contain "a significant amount of detail" and "strongly corroborate one another," including referencing the dates, case numbers, and charges for the prior 2009 and 2013 convictions. *Ortega-Calderon*, 814 F.3d at 762. Nor has Arayatanon offered evidence to rebut the reliability of the documents and his signed admissions, or denied that he was convicted. *See id.* ("We have previously refused to find evidence of a prior conviction to be unreliable when the defendant has not come forward with contrary proof, and we do so again here."). Consequently, the district court did not commit clear error in relying on these documents to

---

[8] *Gutierrez-Ramirez* and *Moreno-Florean* involved sentencing enhancements under U.S.S.G. § 2L1.2, which increases the offense level for a conviction of unlawful reentry if the defendant was previously convicted of a "drug trafficking offense" or "crime of violence." *Gutierrez-Ramirez*, 405 F.3d at 353–54; *Moreno-Florean*, 542 F.3d at 449. Because the qualifying prior convictions in § 2L1.2 and § 4B1.2(b) are defined in substantially the same way, "cases discussing these definitions are cited interchangeably." *United States v. Pillado-Chaparro*, 543 F.3d 202, 205 (5th Cir. 2008) (per curiam); *accord United States v. Mendez-Henriquez*, 847 F.3d 214, 221 (5th Cir. 2017) ("[O]ur court's interpretation of § 4B1.2 informs our interpretation of § 2L1.2, given the two Guidelines' identical language and closely aligned purposes."). The same applies here in considering whether the documents used to establish proof of a prior conviction contain "sufficient indicia of reliability to support its accuracy" to apply a sentencing enhancement. U.S.S.G. § 6A1.3(a).

determine Arayatanon was a career offender under § 4B1.1.  *See Ortega-Calderon*, 814 F.3d at 762–63.

## III.

For the forgoing reasons, we AFFIRM Arayatanon's conviction and sentence.