# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 17, 2021

Lyle W. Cayce
Clerk

No. 20-10814

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DANNY JEWELL,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-363-1

Before DENNIS and ENGELHARDT, *Circuit Judges*, and HICKS\*, *Chief District Judge*.

PER CURIAM\*:

Danny Jewell pleaded guilty, without a plea agreement, to one count of conspiracy to possess with intent to distribute 50 grams or more of

---

\* Chief District Judge of the Western District of Louisiana, sitting by designation.

\* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-10814

methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. Jewell was sentenced to 275 months imprisonment followed by a four-year term of supervised release. Jewell's sentence was ordered to run concurrently with any future sentence imposed in state Case No. DC-F2019-00940 and consecutively with any future sentence imposed in state Case No. F47605, both of which are pending in the 294th Judicial District Court, Johnson County, Texas. Jewell challenges the procedural and substantive reasonableness of his sentence. We AFFIRM.

I.

Jewell was in state custody from 2013, until his release on August 27, 2018.[1] Sometime thereafter, he joined a methamphetamine distribution chain. A methamphetamine supplier named Alfredo Trejo distributed the drug to Jewell, co-defendant Karen Maxwell (Maxwell), a.k.a. Karen Ivey, and others. Notably, Maxwell also received the drug from Mexico through an unidentified source of supply. Maxwell then distributed her supply of methamphetamine to Jewell and other co-defendants. Jewell would then distribute to co-defendant Michael Pipkin (Pipkin). In March 2019, Homeland Security and Drug Enforcement Administration agents initiated an investigation into this distribution ring stemming from Johnson County and other surrounding Texas counties.

From January or February 2019 to August 2019, Jewell completed numerous methamphetamine transactions at his "residence," according to co-defendant Pipkin. On July 17, 2019, Johnson County Sheriff's deputies conducted a controlled buy of methamphetamine from Jewell at a home located at 2023 East Henderson, Lot No. 20, Cleburne, Texas. Jewell was

---

[1] Jewell was arrested on June 9, 2013, after a traffic stop revealed he had methamphetamine in his vehicle. He was released on parole on August 27, 2018. A parole revocation warrant was issued on September 25, 2019, in Case No. F47605 in the 294th Judicial District Court, Johnson County, Texas.

No. 20-10814

then arrested on September 10, 2019, by Johnson County Sherriff's deputies following a traffic stop.

Jewell was charged with a state offense for the manufacture or delivery of a substance in Penalty Group 1. Shortly thereafter, on October 21, 2019, Jewell, along with seven (7) other co-defendants, was named in a single-count criminal complaint filed in the United States District Court for the Northern District of Texas, Fort Worth Division. Jewell remained in state custody from September 10, 2019, until he was transferred to the custody of the U.S. Marshals Service on November 7, 2019, pursuant to a writ of habeas corpus *ad prosequendum*. On January 28, 2020, Jewell pleaded guilty, without a plea agreement, to the single-count complaint.

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report (PSR). Jewell's base offense level of 31 was calculated pursuant to U.S.S.G. § 2D1.1(c)(4) because his offense involved at least 3,000, but less than 10,000 kilograms of "Converted Drug Weight" methamphetamine. This calculation included a two-level enhancement for maintaining a premises for the purpose of manufacturing and distributing the methamphetamine. U.S.S.G. § 2D1.1(b)(12). Jewell's offense level was decreased two levels for acceptance of responsibility and assisting authorities. His criminal history category of VI reflected his 13 prior convictions, four of which were felony drug offenses. His guideline range was calculated at 188-235 months imprisonment.

The PSR was then modified by an addendum, that included an increase of two points in his base offense level under U.S.S.G. § 2D1.1(b)(5), because a portion of the methamphetamine possessed and distributed by

No. 20-10814

Jewell was purportedly imported from Mexico. Jewell's new guideline range was raised to 235-293 months. Jewell objected to both enhancements.

At sentencing, the district court overruled Jewell's objections to the enhancements and denied his requests for a downward variance and credit for time served in custody. The court imposed a 275-month term of imprisonment followed by a four-year term of supervised release. The sentence was ordered to run concurrent to any future sentence stemming from Jewell's state arrest on September 10, 2019, and consecutive to any future sentence resulting from Jewell's inevitable parole revocation. The district court determined the sentence was sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a). Jewell timely appealed.

## II.

Jewell's appeal is two-fold. First, in a series of four individual assertions, Jewell argues the district court committed reversible procedural error by (1) improperly applying two offense enhancements under U.S.S.G. §§ 2D1.1(b)(5) and (b)(12); (2) failing to address the relevant sentencing factors under 18 U.S.C. § 3553(a); (3) denying Jewell credit for time served in custody pursuant to 18 U.S.C. § 3585(b); and (4) withholding an explanation as to the court's reasoning for concurrent and consecutive sentences. Second, Jewell contends that the sentence is substantively unreasonable.

A district court errs procedurally when it fails to properly calculate the sentence, selects a sentence based on clearly erroneous facts, or fails to adequately explain the sentence imposed. *United States v. Duke*, 788 F.3d 392, 396 (5th Cir. 2015). However, a procedural error is harmless if the error did not affect the district court's selection of the sentence. *United States v. Leontaritis*, 977 F.3d 447, 452 (5th Cir. 2020). This is true even in instances

where a district court failed to consider the correct guideline range so long as "the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Id.* (quoting *United States v. Ibarra-Luna*, 628 F.3d 712, 713-714 (5th Cir. 2010)).

Jewell's procedural error claims can be further categorized into those preserved before the district court and those unpreserved. His preserved objections to the two sentencing enhancements included in the district court's guideline calculation are reviewed de novo and the district court's findings of fact are evaluated for clear error. *United States v. Peterson*, 977 F.3d 381, 392 (5th Cir. 2020). "The government must prove the facts underlying a sentencing enhancement by a preponderance of the evidence." *United States v. Arayatanon*, 980 F.3d 444, 452 (5th Cir. 2020). A factual finding which is "plausible in light of the record as a whole" is not clearly erroneous; rather, there is clear error where review of the record results in "a definite and firm conviction that a mistake has been committed." *Peterson*, 977 F.3d at 396 (quoting *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam)).

His unpreserved claims—that the district court did not consider all relevant information, nor did it give full explanation for the chosen sentence without credit for time served—are reviewable for plain error, which requires a showing of a clear or obvious error that affected a substantial right and "has a serious effect on the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012)) (internal quotation marks omitted).

We review the substantive reasonableness of Jewell's sentence for abuse of discretion and may presume the sentence is reasonable if it falls

within the correctly calculated guideline range. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597 (2007).  However, this presumption may be overcome by a showing "that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *Duke*, 788 F.3d at 397 (quoting *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009)).

## III.

Prior to imposing Jewell's sentence, the district court adopted the PSR and its addendum as the factual basis for Jewell's calculated base offense level, criminal history category, and advisory guideline range. Jewell objected to the court's calculation and the Government rebutted with testimony from Jewell's co-defendants to support the district court's findings.

The PSR has a presumption of reliability; likewise, co-conspirators' statements are reliable enough to form a factual finding basis. *United States. v. Rico*, 864 F.3d 381, 386 (5th Cir. 2017). Any party challenging the reliability of the PSR bears the burden of proving the material contained therein is "materially untrue, inaccurate or unreliable." *United States v. Gomez-Alvarez*, 781 F.3d 787, 796 (5th Cir. 2015) (internal quotation marks and citation omitted).

Jewell again challenges the inclusion of the two sentencing enhancements pursuant to U.S.S.G. §§ 2D1.1(b)(5) and (b)(12) and avers that the PSR and co-defendant testimony produced by the Government are unsupportive of the enhancements due to the insufficient and erroneous information contained therein.

*i. U.S.S.G. § 2D1.1(b)(5)*

Section 2D1.1(b)(5) provides for a two-level increase in a defendant's base offense level should the charged offense involve "the importation of amphetamine or methamphetamine…." U.S.S.G. § 2D1.1(b)(5). This importation enhancement is applicable upon a showing by preponderance of the evidence that the drug in question was imported. A defendant's relevant conduct may be considered in the analysis. U.S.S.G. § 1B1.3. The defendant's knowledge of the imported nature of the drug is inconsequential to the analysis. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012), *cert denied*, 133 S.Ct. 623 (2012).

Jewell argues inclusion of the importation enhancement is procedurally unreasonable because it is predicated on the erroneous facts of the addendum which fail to prove the methamphetamine was imported. Jewell seeks to undermine the reliability of the addendum by pointing out the "unknowns" surrounding the importation of the drug—who is the source in Mexico, when and where was the drug imported, and what is the chemical makeup of the methamphetamine.

Furthermore, Jewell avers that the importation of the methamphetamine does not constitute relevant conduct under section 1B1.3 of the guidelines. Commentary to the guideline underscores that a district court must focus on determining the particular acts for which a defendant should be held accountable. U.S.S.G. § 1B1.3, cmt. n.1. Jewell contends he cannot be responsible for the importation of methamphetamine because he did not agree to a "jointly undertaken criminal activity" with Maxwell. U.S.S.G. § 1B1.3.

The PSR addendum indicates two sources from whom Jewell had the opportunity to receive imported methamphetamine. First, Jewell's co-defendant Maxwell primarily received methamphetamine from an unknown

source who received the drug from a source in Mexico. Maxwell would then distribute methamphetamine to Jewell and his co-defendant, Darrell Wise (Wise). Jewell is also known to have received the drug directly from Wise.

The Government offered corroborating evidence in the form of testimony by co-defendant Wise who established that Maxwell was supplied by an individual in Mexico. Wise stated this source would sell to Maxwell approximately one kilogram of methamphetamine every one to two weeks. The U.S. Probation Officer explained that these transactions were confirmed by investigative case agents.

We find no error in the district court's application of the importation enhancement based on the information contained in the PSR addendum. It is plausible that the district court could infer by a preponderance of the evidence that at least some of the methamphetamine possessed by Jewell was imported. *See Arayatanon*, 980 F.3d at 452.

As for Jewell's argument that the importation cannot be treated as relevant conduct, "distribution (or possession with intent to distribute) of imported meth[amphetamine] even without more, may subject a defendant to the § 2D1.1(b)(5) enhancement." *United States v. Kearby*, 943 F.3d 969, 976-77 (5th Cir. 2019) (internal quotation marks omitted). The mere fact that the Government was able to prove that the drug was "imported is enough to warrant the enhancement." *United States v. Rodden*, 481 Fed. Appx. 985, 985 (5th Cir. 2013).

We note that Jewell also encouraged this court to reconsider our previous holding in *Serfass* and requests we either overrule or reestablish the analysis a district court must conduct to evaluate whether the drug in question was imported. We decline to overrule the precedent absent an en banc sitting. We also believe that clarification of *Serfass* is unnecessary at this time.

### ii. U.S.S.G. § 2D1.1(b)(12)

Section 2D1.1(b)(12) permits a two-level increase for any defendant who "maintain[s] a premises for the purpose of manufacturing or distributing a controlled substance…." U.S.S.G. § 2D1.1(b)(12). The defendant must knowingly operate the premises for the principal or primary purpose of substance manufacture, storage, or distribution. U.S.S.G § 2D1.1(b)(12), cmt. n.17. A district court should consider "(A) whether the defendant held a possessory interest in the premises and (B) the extent to which the defendant-controlled access to, or activities at, the premises." U.S.S.G § 2D1.1(b)(12), cmt. n.17.

Jewell again seeks to discredit the PSR by arguing that he does not own, reside in, or control access to the house at 2023 East Henderson, Lot No. 20, in Cleburne, Texas. He further underscores that Probation's only support for the enhancement is the known controlled buy that occurred at the East Henderson house.

The PSR states that in 2019, Jewell distributed methamphetamine to co-defendant Pipkin roughly 29 times at Jewell's "residence." That same year, Johnson County Sheriff's deputies conducted a controlled buy of methamphetamine from Jewell at the East Henderson home. Finally, the PSR records a receipt of methamphetamine by Jewell from a co-conspirator at his residence in 2019.

To substantiate the assertion that Jewell operated the East Henderson house for the purpose of methamphetamine distribution, the Government offers the statements of co-defendant Pipkin who confirmed the transactions with Jewell and further established that the sales were at Jewell's residence. To tie all transactions to the East Henderson house, the Government relies on the PSR's report that Jewell resided with his mother in the house from 2004-2019.

As with the importation enhancement, we find no error in the district court's inclusion of the premises enhancement. A plausible inference may be drawn that not only connects all known transactions at Jewell's "residence" with the East Henderson house, but also shows that Jewell operated the house for his methamphetamine distribution and storage. *See Arayatanon*, 980 F.3d at 452. Though Jewell underscores that co-defendant Pipkin did not identify the East Henderson house as Jewell's residence, we agree with the district court that the controlled buy by Johnson County Sheriff's deputies at the East Henderson house, coupled with the knowledge that Jewell resided in the East Henderson house with his mother at the time of the conspiracy, is enough to support a finding for the enhancement. Furthermore, the number of transactions reported by the PSR and Pipkin confirms Jewell's use of the house for distribution was not incidental.

Even if the district court erred in applying both enhancements, we believe those errors are harmless because, as the district court explained, "[e]ven if the guideline calculations today are not correct, this would have been the same sentence that [the court] would have imposed otherwise based on [the court's] review of the factors set forth in" 18 U.S.C. § 3553(a). The factors contemplated by the district court, including Jewell's history of addiction and abuse, his extensive criminal history, and the need to deter future criminal conduct, create an independent basis for the district court's chosen sentence. *United States v. Medel-Guadalupe*, 979 F.3d 1019, 1025 (5th Cir. 2020) (per curiam) (finding that the error was not reversible because the sentencing choice was made irrespective of the guidelines).

Reversal based on the calculation of the sentencing guidelines is not warranted in light of the district court's lack of clear error.

IV.

Following imposition of a sentence, the district court must provide enough explanation for the given sentence "to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Duke*, 788 F.3d at 396 (5th Cir. 2015) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). If a district court imposes a within guideline sentence, "little explanation" is required. *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

Jewell believes the district court erred by failing to adequately consider and explain all relevant section 3553(a) factors, the potential for credit for time served, or the availability of concurrent and consecutive sentences. However, the district court thoroughly discussed its reliance on the information contained in the PSR and its addendum, its review of Jewell's sentencing memorandum, defense counsel's arguments at sentencing, its awareness of Jewell's extensive criminal history and numerous prison sentences, and the § 3553(a) factors. We find no shortage of explanation by the district court.

We also believe Jewell's contentions that the district court did not give any reasons for denying him credit for time served or explain its decision to impose concurrent and consecutive sentences lack merit. First, the Attorney General is tasked with awarding credit, not the district courts. *United States v. Aparicio*, 963 F.3d 470, 477 (5th Cir.), *cert. denied*, 141 S.Ct. 435 (2020). It follows then that the district court cannot be in error when it fails to explain a decision it cannot make. *United States v. Whitelaw*, 580 F.3d 256, 260 (5th Cir. 2009). Second, "neither the Supreme Court nor this court has ever held that a district court's failure to explain its rationale for imposing consecutive sentences constitutes procedural error." *United States v. Gozes-Wagner*, 977 F.3d 323, 343 (5th Cir. 2020).

No. 20-10814

Accordingly, we find no procedural error by the district court in its consideration and explanation of Jewell's sentence.

## V.

We further find Jewell's sentence to be substantively reasonable in light of the district court's consideration and discussion of all relevant section 3553(a) factors as detailed above. While Jewell avers that the district court disregarded his continued battle with drug addiction, his history of abuse, and underlying health issues, the district court was repeatedly made aware of these factors in sentencing memoranda and oral arguments. The district court ultimately determined that these factors were outweighed by the need for respect for the law and the deterrence of criminal activity.

## VI.

For the foregoing reasons, we AFFIRM the judgment of the district court.