# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2023

Lyle W. Cayce
Clerk

No. 22-10855

United States of America,

*Plaintiff—Appellee*,

*versus*

Paris Hite Kimberling,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:22-CR-10-3

_____

Before Richman, *Chief Judge*, and Southwick and Oldham, *Circuit Judges*.

Per Curiam:[*]

Paris Hite Kimberling was convicted of conspiring to possess with intent to distribute methamphetamine. On appeal, Kimberling claims the district court erred by finding that the offense involved methamphetamine imported from Mexico and by applying the corresponding drug-importation enhancement. *See* U.S.S.G. § 2D1.1(b)(5). We disagree and affirm.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10855

## I.

### A.

Paris Kimberling sold methamphetamine to undercover Texas Department of Public Safety ("DPS") agents four times between January 20 and February 23, 2021. A Drug Enforcement Administration ("DEA") laboratory calculated the drug weight at 41.6 grams of 99% pure methamphetamine for the first transaction; 27.7 grams of 96% pure methamphetamine for the second; 56 grams of 98% pure methamphetamine for the third; and 55.56 grams of 97% pure methamphetamine for the fourth. Then, on March 10, Kimberling agreed to sell 4 more ounces (roughly 113 grams) to an undercover DPS agent. Upon arrival, DPS agents arrested Kimberling and Jaycie Jo Burkett—Kimberling's then girlfriend and now co-defendant. The DPS agents seized the agreed-upon methamphetamine, which DEA lab testing determined to weigh 107.2 grams and to be 99% pure. The agents also discovered an additional .259 grams of 100% pure methamphetamine in Burkett's purse. Kimberling was eventually held accountable for 281.59 grams of methamphetamine (actual).

In a post-arrest interview, Kimberling waived his *Miranda* rights and identified co-defendant Lovick Haldon Stikeleather as his supplier. Specifically, Kimberling said he purchased methamphetamine from Stikeleather approximately six times between late December 2020 and early March 2021—in quantities matching that which Kimberling sold to DPS agents over the same period. Stikeleather himself dealt in multi-kilogram quantities of methamphetamine and admittedly received some of his product "from at least one Mexican based source."

### B.

Kimberling pled guilty to one count of conspiring to possess with intent to distribute at least 50 grams of methamphetamine in violation of 21

U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). The presentence report calculated Kimberling's offense level as 31 and his criminal-history category as IV, yielding a Guidelines range of 151 to 188 months in prison and 4 to 5 years of supervised release. The offense level of 31 reflected, in relevant part, the application of a 2-point enhancement under U.S.S.G. § 2D1.1(b)(5) for offenses involving imported methamphetamine.

Kimberling objected. He claimed the offense level should instead be 29, which would produce a Guidelines range of 121 to 151 months. Kimberling argued that the § 2D1.1(b)(5) importation enhancement should not apply because there was insufficient evidence linking the methamphetamine to Mexico. The district court disagreed, overruled the objection, and sentenced Kimberling to 151 months' imprisonment and 4 years' supervised release.

Kimberling timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

On appeal, Kimberling argues that the district court erred by imposing the § 2D1.1(b)(5) importation enhancement. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (explaining that district courts must avoid "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range"). Section 2D1.1(b)(5) provides for a 2-point increase in a defendant's offense level if "the offense involved the importation of . . . methamphetamine." U.S.S.G. § 2D1.1(b)(5)(A). The importation enhancement applies regardless of whether the defendant or his supplier imported the drugs. *See United States v. Foulks*, 747 F.3d 914, 915 (5th Cir. 2014) (per curiam). It likewise applies "even if the defendant did not know that the methamphetamine was imported." *United States v. Serfass*, 684 F.3d 548, 554 (5th Cir. 2012).

No. 22-10855

Whether an offense involves the importation of methamphetamine is a factual determination. *United States v. Gentry*, 941 F.3d 767, 792 (5th Cir. 2019). That means that the Government "must prove the facts underlying [the] enhancement by a preponderance of the evidence," *Serfasss*, 684 F.3d at 553; that the defendant can attempt to show "the [Government's] information is materially untrue, inaccurate[,] or unreliable," *United States v. Gomez-Alvarez*, 781 F.3d 787, 796 (5th Cir. 2015) (quotation omitted); and that in making its ultimate decision, the district court can consider all "relevant information without regard to its admissibility under the rules of evidence," U.S.S.G. § 6A1.3(a).

It also means that we review Kimberling's preserved challenge to the district court's factual determination for clear error. *See United States v. Brune*, 991 F.3d 652, 667 (5th Cir. 2021) ("We review the district court's factual determination that an offense involved the importation of methamphetamine for clear error." (quotation omitted)). "There is no clear error where the district court's finding is plausible in light of the record as a whole." *United States v. Rico*, 864 F.3d 381, 383 (5th Cir. 2017). Accordingly, we will only reverse the district court's application of the § 2D1.1(b)(5) importation enhancement if our review of the entire record leaves us "with a definite and firm conviction that a mistake has been committed." *United States v. Arayatanon*, 980 F.3d 444, 453 (5th Cir. 2020) (quotation omitted).

Kimberling has not made such a showing. He argues that Stikeleather, his supplier, had multiple methamphetamine sources during the relevant timeframe. Thus, Kimberling claims, Stikeleather's admission that he purchased drugs "from at least one" Mexican source cannot by itself support the inference that Kimberling likely received imported methamphetamine from Stikeleather.

4

Kimberling relies primarily on one unpublished case: *United States v. Nimerfroh*, 716 F. App'x 311 (5th Cir. 2018) (per curiam). There, the district court levied the § 2D1.1(b)(5) importation enhancement based on Nimerfroh's statement that he "was dealing with the 'cartel.'" *Id.* at 313. We held that "without more, the mere reference to a cartel is insufficient to prove by a preponderance of the evidence that Nimerfroh was dealing with imported methamphetamine." *Id.* at 316. Kimberling reasons there was similarly insufficient context in his case for the district court to draw the inference that some of the methamphetamine had likely been imported.

We disagree. *Nimerfroh* stands for the unremarkable proposition that not all circumstantial evidence is by itself sufficient to support the § 2D1.1(b)(5) enhancement. That is as true here as it is for the myriad other factual determinations courts make daily. Sometimes there is direct evidence of importation. *See, e.g.*, *United States v. Castillo-Curiel*, 579 F. App'x 239, 239 (5th Cir. 2014) (per curiam) (defendant's suppliers received drug loads in Mexico, coordinated trafficking routes within the United States, and had the proceeds returned to Mexico in hidden vehicle compartments); *United States v. Solorzano*, 832 F. App'x 276, 283 (5th Cir. 2020) (per curiam) (defendant's cousin testified that defendant had "obtained [the] methamphetamine from 'the Mexicans'"). Other times, courts must decide whether the cumulative effect of the circumstantial evidence clears the "preponderance of the evidence" threshold. *Serfass*, 684 F.3d at 553; *see, e.g.*, *Brune*, 991 F.3d at 666–67 (defendant sold large amounts of meth, and his supplier was a known member of a cartel that borrows its name from a Mexican state); *Arayatanon*, 980 F.3d at 452 (holding that the high purity of the drugs alongside defendant's known trips to Mexico were sufficient to affirm the importation enhancement).

Here, unlike in *Nimerfroh*, there are three strong and independent indications that at least some of Kimberling's methamphetamine was imported. Together, they compel affirmance.

First, drug purity. In *United States v. Arayatanon,* we recognized that methamphetamine's purity is probative of its origin. *See* 980 F.3d at 452 ("DEA agents advised the probation officer that the methamphetamine 'was likely imported into the United States' because 'there are no known labs in the United States that can manufacture methamphetamine of this purity level.'"). Kimberling's offense involved 96–100% pure methamphetamine, which is strong evidence that at least some of it was manufactured abroad. *Cf. United States v. Armendariz*, 2022 WL 7284002, at *1 (5th Cir. Oct. 12, 2022) (per curiam) (97–99% purity considered probative of foreign origin); *United States v. Cadena*, 642 F. App'x 306, 307 (5th Cir. 2016) (per curiam) (98.6%); *Arayatanon*, 980 F.3d at 452 (100%).

Next, drug quantity. We have previously explained that the greater the volume of drugs involved in an offense, the greater the likelihood those drugs were manufactured on foreign soil. In *United States v. Brune*, for example, the fact that "Brune sold at least 50–75 pounds [or roughly 23–34 kilograms] of meth over nine months . . . support[ed] the inference that some of Brune's drugs were imported." 991 F.3d at 667; *see also Armendariz*, 2022 WL 7284002, at *1 (14 kilograms considered probative of foreign origin). The inference is even stronger here: Kimberling acknowledges that his supplier, Stikeleather, purchased at least 199 kilograms of methamphetamine at the same time Kimberling was sourcing his methamphetamine from Stikeleather. That's more than five times the amount of methamphetamine we found indicative of importation in *Brune*.

Last, drug nexity. To support applying the drug-importation enhancement, the Government will often point to evidence of a nexus

between the drugs involved in the offense and foreign producers or distributers. In *Arayatanon*, for example, the defendant and those associated with him had taken various trips to Mexico. 980 F.3d at 452. In *Armendariz*, "several men from Michocacan, Mexico came looking for the drugs." 2022 WL 7284002, at *1. And in *Brune*, defendant's supplier was a member of the Michoacán Cartel based in Dallas—a cartel that "borrows its name from a Mexican state." 991 F.3d at 667. Here, Kimberling's supplier admittedly received drugs "from at least one Mexican based source." Especially in conjunction with the fact that Kimberling purchased methamphetamine from Stikeleather on six different occasions between December 2020 and March 2021, Stikeleather's admitted connection to Mexican methamphetamine sources increases the likelihood that at least some of the drugs Kimberling purchased were imported.

Altogether, the purity of Kimberling's drugs, the volume at which his supplier dealt, and the known nexity of his supplier to Mexican sources strongly support applying the § 2D1.1(b)(5) importation enhancement. Kimberling protests that none of these indicia would alone warrant applying the enhancement. But that is not the legal standard. The legal standard is whether, in viewing the record as a whole, we are left "with a definite and firm conviction that a mistake has been committed." *Arayatanon*, 980 F.3d at 453. And here, the record strongly supports—rather than firmly undermines—our confidence in the district court's factual finding.

AFFIRMED.