[Cite as *State v. Thoen*, 2024-Ohio-5720.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| DANIEL G. THOEN | : | Case No. 23CA15 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 23CR05-0133


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            December 4, 2024


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

CHIP MCCONVILLE                       R. JESSICA MANUNGO
117 East High Street                  MAX HERSCH
Suite 234                             210 East Broad Street
Mount Vernon, OH  43050               Suite 1400

Columbus, OH  43215

*King, J.*

{¶ 1}   Defendant-Appellant Daniel Thoen appeals the October 20, 2023 judgment of conviction and sentence of the Knox County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

## FACTS AND PROCEDUARL HISTORY

{¶ 2}   In March of 2023, four-year-old Jane Doe told her mother that that she had put Thoen's penis in her mouth and "I didn't use my teeth." Transcript of trial (TT) at 25-27. Thoen is the child's grandfather. Doe also "indicated by gestures an act of oral sex." *Id.* Mother called police and an investigation into the matter began. TT 29.

{¶ 3}   Doe was seen at Nationwide Children's Hospital for a forensic interview and medical screening. Doe identified male private parts on an anatomical drawing. She indicated grandpa's penis went into her mouth. TT 56, 60-61. Doe was difficult to understand during the interview due to her age and slight speech impediment. TT 22, 61.

{¶ 4}   The same day, Doe was seen by a pediatric sexual assault nurse examiner. Based on Doe's disclosure the nurse ordered testing for sexually transmitted diseases, collection of oral swabs and urine. Swabs were also taken from the front and back panels of Doe's underwear, her thighs, and mons pubis. TT 76-77. Later testing determined there was no DNA foreign to Doe on the oral swabs, however the swabs from her thighs, mons pubis, and underwear contained male DNA. There was not of a sufficient amount of DNA present for comparison or identification. TT 80, State's exhibit 6.

{¶ 5}   Detectives from the Knox County Sheriff's Office interviewed Thoen. He was provided with his *Miranda* warnings and agreed to speak with the detectives. Thoen confessed to allowing Doe to touch his genitals and place his penis in her mouth. He

stated this occurred while the two were lying in bed on a Sunday morning while the rest of the family was either getting ready for church or at church. He stated Doe pulled his pajama pants down to facilitate the act. He denied any attraction to children. Rather he stated this was a one-time situation where he wondered what the child would do. State's trial exhibit 8, TT 106.

{¶ 6} As a result of these events, Thoen was charged by complaint in the Mount Vernon Municipal Court with one count of rape of a person less than 13 years of age. The matter was bound over to the Knox County Court of Common Pleas. Following bindover, Thoen entered into plea negotiations with the State and agreed to plead to a bill of information charging one count of rape of a child under the age of ten pursuant to R.C. 2907.02(A)(1)(b). The written plea of guilty erroneously advised the possible terms of incarceration as three, four, five, six, seven, eight, nine, ten or eleven years plus fifty percent of the term.

{¶ 7} On April 27, 2023, Thoen entered a plea of guilty to the bill of information. During the hearing, apparently in reliance on the charging documents, the trial court erroneously advised Thoen of the maximum penalty as outlined therein. A presentence investigation was ordered and sentencing was set for May 25, 2023.

{¶ 8} Before sentencing, however, the state became aware of its error. A new bill of information was prepared which reflected the correct maximum penalty of a life tail. A hearing was held on May 24, 2023 wherein the state moved to dismiss the original bill of information and proceed on the new bill of information. Transcript of hearing (TH1) 3-4. Counsel for Thoen asked the trial court to enforce the original plea and simply leave the

age of the victim out of the indictment. TH1 5-6. The trial court declined to agree to counsel's solution. TH1 6-7.

{¶ 9}  The state therefore presented the matter to the Knox County Grand Jury. On June 5, 2023 the Grand Jury returned an indictment charging Thoen with one count of rape of a child under the age of ten pursuant to R.C. 2907.02(A)(1)(b). Thoen pled not guilty to the charge.

{¶ 10} On June 16, 2023. Thoen filed a motion to dismiss the indictment on double jeopardy grounds. The state filed a motion in opposition. On July 10, 2023, the trial court denied Thoen's motion finding jeopardy never attached.

{¶ 11} Thoen also filed a motion to suppress his confession. Following a hearing on the matter, the trial court overruled Thoen's motion.

{¶ 12} On September 5, 2023, the trial court conducted an in-camera voir dire of Jane Doe to determine her competency to testify. Following the hearing, the trial court found on the record "I don't think that, based on her testimony this morning that, that she would be a good witness or competent to testify."  Transcript of competency hearing (TC) at 39. In a subsequent judgment entry, the trial court indicated that while Doe demonstrated and understanding of good verses bad, mistake, accident, and right versus wrong, her responses were largely non-verbal. The court further noted that Doe sat in her mother's lap for the interview and was difficult to understand. This required her mother to interpret Doe's responses. Doe became completely nonverbal when asked about the incident with Thoen. The trial court concluded:

The Court finds the *Fraizer* [61 Ohio St.3d 247] factors were established during the interview except for "(3) the child's ability to communicate what was observed" because of the difficulty in understanding her spoken words without the assistance of her mother to explain her statement. The Court finds the child witness meets all the other *Fraizer* factors. But due to the child's inability to communicate clearly, and out of concern for further trauma to the 4 year-old victim, the Court finds the testimony from this child witness will not assist the jury in a determination of the facts of this case.

{¶ 13} Judgment Entry September 7, 2023.

{¶ 14} Thoen waived his right to a jury trial and elected to proceed to a bench trial which took place on September 19, 2023. The state presented evidence from the detectives and deputies involved in the investigation of the case, Doe's mother, the social worker who conducted Doe's forensic interview, and the pediatric sexual assault nurse examiner. Thoen presented no witnesses. At the conclusion of testimony, the trial court found Thoen guilty as charged.

{¶ 15} The trial court held a sentencing hearing on October 19, 2023. Thoen was sentenced to the mandatory sentence of 15 years to life and was further classified as a Tier III offender.

{¶ 16} Thoen filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 17} "THE TRIAL COURT ERRED WHEN IT DENIED DANIEL THOEN'S MOTION TO DISMISS THE NEW INDICTMENT ON DOUBLE JEOPARDY GROUNDS.

II

{¶ 18} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT EXCLUDED C.T. FROM TESTIFYING WITHOUT A LAWFUL BASIS, THEREBY VIOLATING MR. THOEN'S RIGHT TO CONFRONTATION."

I

{¶ 19} In his first assignment of error, Thoen raises a double jeopardy argument, claiming his original guilty plea barred the later trial. The State argues that we do not need to reach the double jeopardy claim because the original case proceeded without subject matter jurisdiction. We address that argument first.

Subject Matter Jurisdiction and R.C. 2941.021

{¶ 20} The state argues that because R.C. 2941.021 bars the use of a bill of information in a case such as this, the trial court lacked subject matter jurisdiction. We disagree.

{¶ 21} The current version of Article IV, Section 4(B) of the Ohio Constitution states "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters . . . as may be provided by law." Our analysis of the text's meaning is focused on the original public meaning of the constitutional provision. *Butt v. Butt*, 2024-Ohio-4689, ¶ 36 (5th Dist.). See also DeWine, R. Patrick, Ohio Constitutional

Interpretation (October 14, 2024); 86 Ohio State L.J. (forthcoming 2025). Whenever necessary, we interpret the constitution's text in light of meaning of the language at its adoption. *Butt* at ¶ 37. And our construction of the constitution's text must be done in light of relevant history and tradition. *Id.* ¶ 42; *State ex rel. Cincinnati Enquirer v. Bloom*, 2024-Ohio-5029 ¶ 35. See also *State v. Skaggs*, 2024-Ohio-4781, ¶ 73 (5th Dist.) (King, J., dissenting).

{¶ 22} The current version of Article IV, Section 4 was adopted in 1968. Prior to the current version, this provision read "[t]he jurisdiction of the courts of common pleas, and of the judges thereof shall be fixed by law." In comparing the two provisions, it is obvious that in 1968 the voters of Ohio constitutionalized the common pleas courts' historically expansive and inclusive subject matter jurisdiction. Indeed, the Supreme Court of Ohio has said as much: "This court has long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.' " *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 20 citing *Saxton v. Seiberling*, 48 Ohio St. 554, 558–559 (1891).

{¶ 23} Typically, the supreme court will not broadly construe a statute to remove the court's subject matter jurisdiction, instead it has looked for a clear statement from the General Assembly for that. Some examples where the court found no deprivation of subject matter jurisdiction include: standing (*Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 20); expiration of the statute of limitations (*State ex rel. Jones v. Suster*, 1998-Ohio-275, 84 Ohio St. 3d 70, 76); failure to convene a three-judge panel in a capital case (*Pratts v. Hurley*, 2004-Ohio-1980, ¶ 10); failure to serve the Attorney General under R.C. 2721.12 (*Cincinnati v. Fourth Nat'l Realty, L.L.C.*, 2020-Ohio-6802); and an error in the

indictment (*State ex rel. Mitchell v. Pittman*, 2022-Ohio-2542, ¶ 12). These examples show that but for an exception provided, a common pleas court will have subject matter jurisdiction to hear the dispute before it.

{¶ 24} Because the constitution's default rule is a common pleas court will have subject matter jurisdiction, "the law" (a statute) must provide for the exception to its jurisdiction. Thus, only the General Assembly can limit a common pleas court's subject matter jurisdiction. *State v. Wilson*, 1995-Ohio-217 at 42. It has only excepted a narrow band of cases from its criminal subject matter jurisdiction: "The court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas." R.C. 2931.03.

{¶ 25} We decline to read R.C. 2941.021 as a clear statement to modify the common pleas court's subject matter jurisdiction under Article IV, Section 4 and R.C. 2931.03. This situation resembles the issue in *Pratts*, which was the court's failure to convene the statutorily mandated three-judge panel. 2004-Ohio-1980, ¶ 10. The Supreme Court of Ohio concluded that the error in the court's exercise of its jurisdiction was wholly separate from its subject matter jurisdiction. *Id.* ¶¶ 34-36. Thus, it was an appealable error, not a judgment entered without subject matter jurisdiction. *Id.*

{¶ 26} Here, we also conclude the court's improper acceptance of a plea upon a bill of information was an error in the exercise of jurisdiction only. Thus, the error was voidable and subject to correction on direct review; it was not an error rendering the proceeding void ab inito. This conclusion is bolstered by the case *State ex rel. Bennett v. White*, 2001-Ohio-1615. There the defendant raised a claim that there was no subject

matter jurisdiction in a case where he pleaded guilty to first-degree rape. *Id.* Rather than address the claim of lack of subject matter jurisdiction, the court stated he had an ordinary remedy in the appeal. *Id.* If there was truly a subject matter jurisdiction issue, the court would have been forced to address it at that time. So, this case suggests the supreme court would likely reach a similar holding as we do here.

{¶ 27} Accordingly, we do not find the trial court's error to proceed on a bill, contrary to R.C. 2941.021, deprives it of subject matter jurisdiction.

### Double Jeopardy

{¶ 28} We turn now to defendant's Double Jeopardy Clause arguments. For the reasons that follow, we conclude jeopardy did not attach to this plea, and, if it had, jeopardy properly terminated.

{¶ 29} We begin, as we must, with the Constitution of the United States. The Fifth Amendment of the United States constitution prevents a person from twice being put in jeopardy for the same offense. In 1969, the Supreme Court extended this prohibition to state prosecutions under the due process of laws clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784 (1969). In its classic formulation, this protection is often viewed as a prohibition of a second prosecution for the same offense after either an acquittal or conviction and prohibition against multiple punishments for the same offense. *State v. Nay*, 1985 WL 9441, at *4 (5th Dist. November 8, 1985) citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). Two narrower and fact intensive applications of the double jeopardy include in some mistrials (Arizona v. Washington, 434 U.S. 497 (1978)) and some guilty pleas (Ricketts v. Adamson, 483 U.S. 1, 8 (1987) (breach of a plea agreement waives double jeopardy protections)).

{¶ 30} It is this last category from which the defendant makes his argument. The foundation for this argument arises from Supreme Court precedent holding a guilty plea constitutes a conviction: "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." *Kercheval v. United States*, 274 U.S. 220, 223 (1927).

{¶ 31} While the Supreme Court did not hold at this time jeopardy also attached, the implication of this statement invites this conclusion. And some federal circuits concluded that jeopardy attached whenever a plea of guilty is accepted. *United States v. Felton*, 753 F.2d 276, 278 (3d Cir.1985); *United States v. Bullock*, 579 F.2d 1116, 1118 (8th Cir. 1978). But over time federal courts have taken a narrower view of the application to double jeopardy to guilty pleas.

{¶ 32} The Eight Circuit rejected a double jeopardy claim in facts similar to the case at bar. *Bally v. Kemna*, 65 F.3d 104, 107 (8th Cir. 1995). In *Bally*, the defendant pleaded guilty to an impaired driving offense without objection from the state. *Id*. 105. Later the state sought to nolle prosequi that charge, which was granted. *Id*. Then the state amended the still pending vehicular assault charge to add an involuntary manslaughter charge. Id. The defendant later unsuccessfully sought to have the case dismissed and then was convicted after a jury trial. *Id*.

{¶ 33} To begin its analysis, the Eighth Circuit rejected its earlier statement that "jeopardy would attach when a plea of guilty is accepted" was binding, finding instead it was dicta. *Id*. Although the state of Missouri asked the court to adopt the position of the Tenth Circuit and hold jeopardy attaches only after sentencing and issuance of judgment

following a plea, the Eight Circuit rejected that approach. *Id.* 108. Instead it adopted a more flexible approach by assuming jeopardy attached upon a guilty plea but not automatically requiring retrial is barred. *Id.* The court concluded that there was no finality interest created in the other charges and any preclusive effect to a guilty plea was narrower than either an acquittal or conviction. *Id.* 108-109.

{¶ 34} On the issues of whether jeopardy attaches to a plea, the Third Circuit was among the first to hold so and became a source of precedent for other circuits to follow. *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir. 1973). But in time the Third Circuit concluded that this was no longer good precedent. *Gilmore v. Zimmerman*, 793 F.2d 564, 571 (3d Cir. 1986).

{¶ 35} Later, the First Circuit also recognized the intervening Supreme Court precedent overruled its precedent and found when a guilty plea is accepted and then rejected in the same proceeding, jeopardy had not attached. *United States v. Santiago Soto*, 825 F.2d 616, 620 (1st Cir. 1987). In that case, the defendant was charged with a misdemeanor by a bill of information and then agreed to plead guilty. *Id.* 617. The trial judge accepted the guilty plea and proceeded to the sentencing hearing. *Id.* Before imposing the sentence the parties had agreed to in their plea agreement, the trial judge dismissed the bill of information. *Id.* The United States then indicted the defendant, who was tried to a jury and convicted. *Id.* 618.

{¶ 36} The First Circuit considered whether jeopardy always attaches to a guilty plea; the court found it did not; and the court agreed with the Third Circuit's decision in *Gilmore*. *Id.* 618-19. It determined that the defendant's finality interests were slight because a plea is not as conclusive as a jury verdict or judgment of conviction. *Id.* 619.

Although it acknowledged there was the possibility of government overreach in the case, any concern over a possible overreach was not enough to overcome the lack of finality. *Id.* Accordingly, the First Circuit upheld the conviction. *Id.*

{¶ 37} The Fifth Circuit recently reviewed its precedent on the application of double jeopardy to pleas and arrived at the same conclusion as the First Circuit. *United States v. Brune,* 991 F.3d 652 (5th Cir. 2021). It began its analysis by noting the Supreme Court has neither defined when jeopardy attaches to a plea or when it terminates. *Id.* 657. Previously, the Fifth Circuit had followed the Third Circuit's rule from *Jerry*, but it too concluded that later Supreme Court case law precluded jeopardy from automatically attaching to every guilty plea. *Id.* 660.

{¶ 38} The Fifth Circuit explicitly set forth a two-part test to determine if jeopardy attached to a plea: the defendant's finality interest and prevention of prosecutorial overreach. *Id.* 665. The court determined that the defendant's finality interest was nil because it sought to benefit from a government error and used jeopardy to prevent its correction. *Id.* 666. Regarding the need to safeguard against prosecutorial overreach, the Fifth Circuit also found it not to be the case. It noted that there was no plea agreement and thus no evidence there was an intent to dupe the defendant. *Id.* Moreover, as there yet had been no trial, there had been no evidence proffered and thus there was not yet any unfairness in subjecting the defendant to a trial. *Id.* As a result, the court concluded jeopardy did not attach and thus there could be no violation. *Id.*

{¶ 39} It appears that the Ninth Circuit is the only circuit that has been asked to reconsider its double jeopardy precedent in light of Supreme Court precedent and refused to do so. *United States v. Patterson,* 406 F.3d 1095, 1100 (9th Cir. 2005) (Kozinski, J.

dissenting from denial of rehearing in banc). Judge Kozinski also helpfully collected a number of cases in other federal circuits citing the pre-*Johnson* rule without any significant analysis or reconsideration. *Id*, 1101.    On the opposite end of the Ninth Circuit, as mentioned above, is the Tenth Circuit. Its rule is that no jeopardy attaches when pleading guilty to a single indictment. *United States v. Combs*, 634 F.2d 1295, 1298 (10th Cir. 1980).

Jeopardy Did Not Attach in This Matter

{¶ 40} Upon consideration of this body of federal case law, we conclude that jeopardy did not irrevocably attach to appellant's guilty plea. We begin our analysis by acknowledging that a significant body of case law, spanning decades, holding that jeopardy attaches to guilty pleas to one degree or another. To that end, we begin with a rebuttal presumption that jeopardy attached to Thoen's plea of guilty to the bill of information. To determine whether the state met its burden to show it did not attach, we adopt the framework from *Brune*, *Santiago Soto*, and Judge Kozinski's dissent in *Patterson*. As we will explain, we conclude the state demonstrated that jeopardy did not attach to the guilty plea in the initial proceeding under this framework.

{¶ 41} We find, consistent with *Brune* and *Santiago Soto* that the defendant had no finality interest in the guilty plea. Although like in *Santiago Soto*, the plea here was to bill of information and apparently as a result of a plea agreement, those facts—even taken together—did not create a finality interest in the plea. We also note that the defendant here did not have a finality interest in the negotiated sentence. Not only was the trial court not obligated to impose a sentence consistent with the plea agreement, but it had no legal authority here to impose the illegal-but-agreed-upon sentence.

{¶ 42} Like the Fifth Circuit in *Brune*, we do not see any evidence of prosecutorial overreach. True, the indicted offense exposed the defendant to a life tail, but that was statutorily mandated. There is no evidence of prosecutorial gamesmanship here to later achieve a greater sentence than it negotiated. To the contrary, the overwhelming evidence shows the prosecutor and defense counsel were both mistaken in the lawfulness of the agreed upon sentence. Thus, there was no prosecutorial overreach.

{¶ 43} We also note that two state courts have reached similar conclusions in similar situations albeit under different frameworks. The West Virginia court of appeals found that there was no bar under double jeopardy after the trial court found the plea agreement impossible to perform due to a misclassification of misdemeanors as felonies and returned the parties to their pre-plea positions. *State ex rel. Gessler v. Mazzone*, 212 W. Va. 368, 374 (2002).

{¶ 44} In situations where there is an illegal plea, Utah allows trial courts to rescind pleas and avoid double jeopardy upon a showing of manifest necessity. *State v. Moss*, 921 P.2d 1021, 1025 (Utah Ct. App. 1996). In *Moss*, the defendant pleaded to a third-degree felony on the condition his plea be held in abeyance. *Id.* 1022. Once the trial court was informed this was an illegal plea, the trial court sua sponte vacated the plea. *Id.* 1023. The defendant was later convicted of rape of a child and related crimes. *Id.* 1022. The appellate court found no violation of double jeopardy because manifest necessity was shown by this "obvious reversible error" and the defendant suffered no prejudice by being restored to his former position. *Id.* 1027

{¶ 45} Therefore, we hold that jeopardy did not attach to the guilty plea; the jury trial was thus proper and was not barred by the double jeopardy clause.

{¶ 46} Even if we were to conclude that jeopardy attached to the guilty plea, we would conclude that the single trial the defendant was subjected to after a dismissal was not barred. The Supreme Court allows for prosecution after dismissals or mistrials without offending Double Jeopardy. *Lee v. United States*, 432 U.S. 23, 31 (1977). This is so long as the dismissal or mistrial without the consent of the defendant was the product of "manifest necessity." *Illinois v. Somerville*, 410 U.S. 458, 459 (1973). Somerville itself presents a similar situation to the one before this court. In *Somerville*, the trial judge declared a mistrial based on an insufficient indictment that could not be cured by amendment. *Id*. The indictment lacked a statement of the requisite criminal intent and was considered by Illinois to be a jurisdictional failure. Id. 459-60.

{¶ 47} Here there were no circumstances in which anyone could cure the error, which was the presentation of the charge by bill of information. The only possible cure was for the state to present the matter a grand jury by way of an indictment. Moreover, there was no circumstances under which the trial court could avoid imposing the life tail on the sentence, despite the absence of that language in the bill of information. Consistent with the Court's observations in *Somerville* that Illinois's rule actually was to the benefit of the defendant by ensuring grand jury presentation, the State of Ohio requires this offense be presented to a grand jury. Thus, we conclude that there was a manifest necessity to proceed by indictment and terminate any proceeding under the bill of information. Accordingly, there was no bar to proceeding to trial after the guilty plea was rendered null. Theon's first assignment of error is therefore overruled.

II

{¶ 48} In his second assignment of error, Thoen argues the trial court erred when it excluded Doe's testimony without lawful basis, thereby violating his right to confrontation.

Applicable Law

{¶ 49} Evid.R. 601 provides in relevant part that every person is competent to testify except one who is "[i]ncapable of expressing himself or herself concerning the matter as to be understood, either directly or through interpretation by one who can understand him or her[.]"

{¶ 50} R.C. 2319.01 provides: "All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

{¶ 51} The Sixth Amendment's Confrontation Clause provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held the Confrontation Clause generally prohibits the introduction of statements that are "testimonial" and made by a nontestifying witness, unless the witness is "unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 54. A statement is testimonial when its "primary purpose" is to "creat[e] an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 369 (2011). "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." However, statements made for the purpose of medical diagnosis and treatment

are nontestimonial. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944.

In *Ohio v. Clark*, 576 U.S. 237 (2015), the United States Supreme Court recognized that

"[s]tatements by very young children will rarely, if ever, implicate the Confrontation

Clause. Few preschool students understand the details of our criminal justice system."

{¶ 52} In determining whether a child under the age of ten is competent to testify,

the trial court must consider: (1) the child's ability to receive accurate impressions of fact

or to observe acts about which he or she will testify, (2) the child's ability to recollect those

impressions or observations, (3) the child's ability to communicate what was observed,

(4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or

her responsibility to be truthful. *State v. Wolters*, 2022-Ohio-538, ¶ 30 (5th Dist.), citing

*State v. Frazier*, 61 Ohio St.3d 247, (1991).

{¶ 53} To reverse a finding of competency, we must find the trial court abused its

discretion. *State v. Scheeler*, 2023-Ohio-1130 ¶ 53 citing *State v. Lewis*, 4 Ohio App.3d

275 (3rd Dist. 1982). "Abuse of discretion" means an attitude that is unreasonable,

arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985).

Most instances of abuse of discretion will result in decisions that are simply unreasonable,

rather than decisions that are unconscionable or arbitrary. *AAAA Ent., Inc. v. River Place

Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161 (1990). An unreasonable

decision is one backed by no sound reasoning process which would support that decision.

Id. "It is not enough that the reviewing court, were it deciding the issue de novo, would

not have found that reasoning process to be persuasive, perhaps in view of countervailing

reasoning processes that would support a contrary result." *Id.*

{¶ 54} Constitutional error may be deemed harmless. The Supreme Court of Ohio recently explained:

> In general, " 'a constitutional error does not automatically require reversal of a conviction.' " *Weaver v. Massachusetts*, 582 U.S. 286, 137 S.Ct. 1899, 1907, 198 L.Ed.2d 420 (2017), quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302, 306 (1991). For purposes of determining whether a conviction should be reversed, the Supreme Court has divided constitutional errors into two classes: "trial errors," which are reviewable for harmless error, and "structural errors," which are per se cause for reversal. *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9, citing *Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 at 306-312, and *State v. Esparza*, 74 Ohio St.3d 660, 661, 660 N.E.2d 1194 (1996). Most constitutional errors are trial errors. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Trial errors occur during " 'presentation of the case to the jury' and their effect may 'be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt.' ""(Brackets sic.) *Id.*, quoting *Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 at 307-308. A constitutional trial error is harmless when the state demonstrates " 'beyond a reasonable doubt that the error

complained of did not contribute to the verdict obtained.' " *Weaver* at 294, 137 S.Ct. at 1907, quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

{¶ 55}  *State v. Montgomery*, 2022-Ohio-2211, ¶ 25 .

{¶ 56}  The burden is upon the state to demonstrate the error did not impact the defendant's substantial rights. *State v. Perry*, 2004-Ohio-297 ¶ 15. Whether the defendant's substantial rights were affected depends on whether the error was prejudicial, i.e., whether it affected the outcome of the trial. *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. We are required to reverse the conviction when the state fails to meet its burden. *Perry* at ¶ 15.

Thoen's Arguments

{¶ 57} Thoen argues the trial court abused its discretion when it excluded Doe's testimony without finding she was incompetent to testify. Thoen points to the judgment entry wherein trial court found Doe's testimony would be excluded "due to the child's inability to communicate clearly, and out of concern for further trauma to the 4 year-old victim, the Court finds the testimony from this child witness will not assist the jury in a determination of the facts of this case." Judgment entry September 7, 2023. Additionally, Thoen points to the trial court's later statement during the suppression hearing clarifying its previous judgment entry. The court stated: I did not find [Doe] incompetent, I found her to be not helpful to give testimony to the . . . Jury because of her pattern of speech, her childlike speech, so that was the finding of the Court[.] Transcript of suppression hearing September 12, 2023 at 21.

{¶ 58} The State recognizes that the trial court did not find Doe incompetent to testify but nonetheless excluded her testimony. The State argues, however, that based on Thoen's confession, harmless error applies. We agree. Because Doe's testimony would have been merely cumulative to Thoen's confession and statements made by Doe during her forensic interview for purposes of medical diagnosis and treatment, we find the exclusion of Doe's testimony did not impact Thoen's substantial rights and did not impact the outcome of the trial. The error was therefore harmless beyond a reasonable doubt.

{¶ 59} The second assignment of error is overruled.

{¶ 60} The judgment of conviction and sentence of the Knox County Court of Common Pleas is affirmed.

By King, J.,

Hoffman, P.J. and

Baldwin, J. concur.